[Civ. No. 10094. First Appellate District, Division One.—February 24, 1937.]

MARY L. McKENNA et al., Respondents, v. L. P. EDWARDS et al., Appellants.

Owen D. Richardson for Appellants.

Louis Oneal and C. E. Luckhardt for Respondents.

KNIGHT, J.—Defendants appeal from an adverse judgment entered pursuant to a verdict by a jury in an action to recover a balance due for services rendered by the plaintiff Mrs. Mary L. McKenna. The cause of action was pleaded in a common count, the allegations thereof being that defendants became indebted to plaintiffs in the sum of $2,634, that $1,063.45 thereof had been paid, and that there was a balance due of $1591.36. The answer consisted of a general denial. ▪ Defendants contend as sole ground for reversal that the earnings sued for constituted broker's commissions for the sale of defendants' corporate stock, and that therefore Mrs. McKenna was entitled to recover nothing for her services because admittedly she was not licensed as a stock broker by the commissioner of corporations. In our opinion the earnings cannot be so classified.

The evidence, although conflicting on some points, establishes the following facts: At the time these transactions took place, the defendants L. P. Edwards and his wife, Clara P. Edwards, were the owners of practically all the corporate stock of the San Jose Title and Abstract Company. The business was operated under Edwards' management; and Mrs. McKenna was the company's secretary and bookkeeper. She had been so for twenty-three years, and during the last fifteen years of her employment she officiated also as Edwards' private secretary. Edwards was indebted to a third party on a secured promissory note for $120,000, which matured at the end of the year 1934. In May of that year he informed Mrs. McKenna that he was fearful the holder of the note would demand payment at maturity and foreclose unless the indebtedness was liquidated; and in view of that

situation he promised Mrs. McKenna that if she would negotiate a loan for him for $100,000, to be secured by the corporate stock in the abstract company belonging to himself and his wife, he would pay her $5,000 for her services. Relying on said promise, Mrs. McKenna immediately contacted several people financially able to make the loan, the last of whom was Martin E. Ray, who was associated with a Mr. Kamb in the management of several investment companies. Ray informed her that a loan was not feasible, but suggested that Edwards sell a block of his stock sufficient to liquidate the indebtedness; that he would still own the controlling interest in the abstract company; and that if he decided to do so the investment companies represented by Kamb and himself would be interested in purchasing the stock. Mrs. McKenna laid Ray's suggestion before Edwards, who stated that he would discuss the matter with his wife. After having done so he told Mrs. McKenna they had concluded to act upon Ray's suggestion; whereupon Mrs. McKenna arranged for a conference between Edwards, Ray and Kamb, which took place in the Masonic Temple in San Jose. Mrs. McKenna was not present at any time during the conference, nor did she participate directly or indirectly in any of the negotiations which took place between the parties. As the result of these negotiations between the parties, and on July 25, 1934, Edwards and his wife entered into a written agreement with Ray and Kamb, in the preparation of which Mrs. McKenna had no part, whereby Edwards and his wife agreed, among other things, to sell to Ray and Kamb 375 shares of their stock for the sum of $112,500. As part performance of the agreement thirty-three and a third shares of the stock and $10,000 in cash were at once deposited in escrow; and as provided by the terms of the agreement Ray and Kamb agreed to pay the balance of the purchase price, amounting to $102,500, on or before December 31, 1934, at which time the remainder of the stock was to be delivered. The agreement went much further, however, than providing merely for a sale of the stock. It embodied a new setup for the future operation of the abstract company. In this regard it provided for a stock "voting trust agreement", the insuring of the life of Edwards, who was to continue as the executive of the company, a limitation upon the amount of dividends to be paid on stock, the fixing of salaries of its officers,

the designation of certain members of the board of directors, and restrictions as to the increase in the amount of capital stock. Immediately following the execution of the agreement Edwards informed Mrs. McKenna that inasmuch as the money was not obtained through the medium of a loan, he could not pay her the $5,000, but that as compensation for the services she had rendered in bringing about the arrangement whereby he was able to secure sufficient money to liquidate the indebtedness on the promissory note, he would pay off the balance of an outstanding loan on her home, which then amounted to $2,634, and which was being paid off by Mrs. McKenna in instalments of approximately $72 a month. And in part performance of such promise Edwards caused to be paid on said loan the sum of $921.01, and later two monthly instalments, thus reducing the amount of the loan to $1591.36. At the end of December, 1934, Ray and Kamb consummated the purchase of the balance of the corporate stock; and on February 5, 1935, Mrs. McKenna resigned her position with the abstract company; whereupon Edwards refused to make any further payments on the outstanding loan on her property, or otherwise to pay her the balance due for her services. The present action was filed on May 25th of the same year.

Subdivision 10 of section 2 of the Corporate Securities Act as amended in 1933 (Stats. 1933, p. 2308) defines a "broker" to be any "person or company, other than an agent, who shall, in this State, engage either wholly or in part in the business of selling, offering for sale, negotiating for the sale of, or otherwise dealing in any security issued by others . . . or of underwriting any issue of such securities, or of purchasing such securities with the purpose of reselling them, or of offering them for sale to the public". And in this connection it has been held that even though there be but a single sale the transaction is not taken out of the operation of the provisions of the foregoing section. (*Van Wyke* v. *Burrows*, 98 Cal. App. 415 [277 Pac. 190].) Here, however, the evidence shows without conflict that Mrs. McKenna at no time engaged in or purported to carry on the business of dealing in stocks; likewise it shows that at no time did she offer for sale or negotiate for the sale of, or sell, any of the Edwards stock. As will be seen, her activities consisted only of soliciting a loan on the stock and afterwards conveying to Edwards the suggestion made by Ray for a sale

of the stock, and arranging a conference between the parties which resulted in the execution of the written agreement above mentioned. As stated, the parties themselves, in the absence of Mrs. McKenna, did their own negotiating, and finally reached an agreement on their own terms which they reduced to writing and subsequently signed, providing not only for the sale of the stock but for the future operation of the company under the conditions therein set forth.

The situation here presented is no different in principle, therefore, from the one dealt with in *Shaffer* v. *Beinhorn,* 190 Cal. 569 [213 Pac. 960], which arose under the Real Estate Brokers' Act. In that act, as in the Corporate Securities Act, it is in substance provided that in order to come within the definition of a broker a party must ''sell or offer to sell, buy or offer to buy, or negotiate the purchase or sale or exchange of real estate . . . ''; and in that case, as here, the services rendered consisted only of finding and introducing to the seller a person interested in making the purchase. In holding that the plaintiff therein was not a broker, the court went on to say that the employment of a person to perform an act preceding the negotiations of a sale does not, in the absence of subsequent assistance rendered in the ultimate negotiations of the sale, bring such person within the scope of the definition of a broker.

Defendants call attention to the wording of the bill of particulars furnished by plaintiffs, wherein it is stated that the claim sued on is for services rendered in ''effecting'' a sale of the stock. It is evident, however, that the use of the word ''effecting'' in said bill amounted to nothing more than a statement of the pleader's conclusion, which fairly construed in the light of the uncontradicted facts meant only the finding of a prospective purchaser, and arranging a conference between the parties themselves, which eventually resulted in the execution by them of an agreement based entirely upon their own negotiations, providing not only for a sale of the stock but also for the future management of the corporation. And as will be noted, the statutory definition of a broker set forth in the Corporate Securities Act contains no terms comprehensive enough to bring within the meaning of said definition a person performing the character of services above mentioned.

.

■ Nor do we find any ground for reversal in the giving or refusal to give any of the instructions to the jury. Defendants' proposed instruction set out on page 109 of the reporter's transcript, which the court refused to give, was based upon the hypothesis that Mrs. McKenna negotiated the sale of the stock; and as shown there was no evidence whatever to justify such hypothesis. And plaintiffs' instruction No. 3, which the court gave, to the effect that under the evidence presented it was not essential for plaintiffs to prove that Mrs. McKenna was a licensed broker in order that plaintiffs might recover, cannot be said to have been prejudicial because it was doubtless correct in the abstract, even though it be assumed, as defendants contend, that it was based on an unsound legal premise.

The conclusions we have reached upon the questions above discussed make it unnecessary to inquire into the remaining points raised by the appeal, including those relating to the interpretation of section 2 (b) (3) of the Corporate Securities Act, and the effect of the failure of defendants to plead as a special defense the alleged violation of the provisions of the Corporate Securities Act.

The judgment is affirmed.

Tyler, P. J., and Cashin, J., concurred.