[Civ. No. 14333.   Second Dist., Div. Three.   Sept. 8, 1944.]

JAMES A. DOUGHERTY, Appellant, v. CHAS. W. CROSS et al., Respondents.

Roy P. Dolley and William W. Kaye for Appellant.

J. E. Simpson and Hansen & Sweeney for Respondents.

WOOD (Parker), J.—This is an action for declaratory relief and for the delivery of personal property. Plaintiff appeals from the judgment in favor of defendants.

The contract concerning which declaratory relief was sought was executed on December 31, 1926, by defendant Cross as the first party, and plaintiff Dougherty, defendant Helen R. Heath and F. L. Neuer as the second parties. F. L. Neuer is deceased, and defendant Ralph E. Heath is the administrator of her estate. Ralph E. Heath is the son of F. L. Neuer and the husband of Helen R. Heath. The contract provides in part as follows:

"Whereas said first party . . . about the 20th day of May, 1926, acquired . . . a lease covering [about 1555 acres] . . . a portion of the premises covered by said lease, comprising approximately three hundred (300) acres, to be used for the purpose of conducting a public golf course thereon; and

"Whereas, while the aforesaid lease was executed in the name of first party as an individual, it was, nevertheless, acquired by him as a Trustee for the benefit of himself and said second parties, said second parties having assisted first party financially and otherwise in acquiring said lease and in promoting the Sunset Golf Corporation, a corporation organized for the purpose of taking an assignment of said lease insofar as the same pertains to the premises to be used for golf purposes . . . and

"Whereas, with the full consent . . . of second parties, first party has agreed to assign said lease to said corporation in exchange for its capital stock to be issued to him, which stock

is required to be held in escrow . . . by the Commissioner of Corporations . . . and

"Whereas the parties hereto desire to have their agreement . . . reduced to writing:

"Now, Therefore, in consideration of the premises . . . the parties . . . agree as follows, to wit:

"1. Said first party does hereby certify and declare that he acquired the aforesaid lease (insofar as same pertains to the premises to be used for golf purposes) as Trustee for the benefit of himself and said second parties as hereinafter set forth; that he was acting as such Trustee when he agreed to assign a portion of said lease to said Sunset Golf Corporation; and that all of the capital stock of said Sunset Golf Corporation that has been issued or may hereafter be issued to him in exchange for said lease is and shall be held by him in trust for the use and benefit of all of the parties hereto and upon the terms and conditions hereinafter set forth

"2. That during the time that said stock . . . shall be required . . . to be held in escrow the certificates therefor shall stand in the name of first party. . . .

"3. That, except as hereinafter provided, all of said stock . . . issued to first party in exchange for said lease shall be held by first party as Trustee for the benefit of all parties hereto, the respective beneficial interests . . . being as follows: James A. Dougherty ⅓ thereof Chas. W. Cross ⅓ thereof Helen R. Heath 1/6 thereof F. L. Neuer 1/6 thereof subject, however, to the conditions hereinafter stated.

"4. Out of the cash dividends received by first party on said stock . . . he shall first pay . . . F. L. Neuer a sum equal to such cash dividends declared and paid on 11,100 shares of such capital stock . . . and first party shall pay to said James A. Dougherty twenty per cent (20%) of remainder of the first cash dividends . . . until such time as he shall have thereby been paid . . . Five Hundred Dollars . . . and the remainder . . . shall . . . be . . . paid out . . . as follows: To James A. Dougherty ⅓ To Chas. W. Cross ⅓ (to be retained by him) To Helen R. Heath 1/6 and To F. L. Neuer 1/6.

"5. When . . . said Commissioner . . . authorizes the release of said stock from escrow, first party shall distribute the whole thereof, with the exception of 11,100 shares, as follows:

James A. Dougherty ⅓ Chas. W. Cross ⅓ (to be retained by him) Helen R. Heath 1/6 and F. L. Neuer 1/6.

"6. Upon such distribution being made . . . first party shall retain in his name as Trustee 11,100 shares of said stock and his duty . . . shall be to collect all cash dividends thereon and pay them over to said F. L. Neuer. . . . While the legal title to said 11,100 shares shall be vested in first party as Trustee . . . the equitable title . . . shall be vested in the parties hereto in the aforesaid proportion, to wit: James A. Dougherty ⅓ thereof Chas. W. Cross ⅓ thereof Helen R. Heath 1/6 thereof F. L. Neuer 1/6 thereof who shall be entitled to vote the same and to receive any stock dividends . . . according to their respective interest therein.

"7. All stock dividends that may be declared on the stock . . . shall, while such stock is . . . in escrow, be issued in the name of first party but shall . . . be held by him . . . in trust for the benefit of the parties hereto in all respects as though the same had been originally issued to him in exchange for said lease; and when said stock is released from escrow the stock issued by way of dividends thereon shall be distributed to the parties hereto in the same proportion that the original stock issued to first party . . . is to be distributed. . . . [Paragraphs 8, 9, 10, 11, 12, 13, 14 and 15 relate, it may be stated generally, to voting the stock and keeping the control of the corporation from passing to persons antagonistic to the corporation.]

"16. It is understood and agreed that the entire interest of the said James A. Dougherty in and to said capital stock as mentioned herein was acquired by him in consideration of his agreement with first party and the other parties hereto to actively assist in the financing of said corporation through the sale of its capital stock, the said James A. Dougherty agreeing to assist said company in selling its stock until there has been sold not less than 100,000 shares of its preferred stock and 50,000 shares of its common stock in units of two shares of preferred and one share of common as provided in the permit issued by the Commissioner of Corporations of the State of California; and it is further expressly understood and agreed, anything herein to the contrary notwithstanding, that if the said James A. Dougherty shall fail or refuse, or be unable owing to illness or other incapacity, to

assist actively in the sale of said stock and shall discontinue active efforts for the sale of said stock before a total of 100,-000 shares of preferred and 50,000 shares of common have been sold, then and in that event the interest of the said James A. Dougherty in the stock to be issued to first party in exchange for said lease, as aforesaid, shall be reduced ratably in proportion as the total amount sold up to the time of such discontinuance is less than the total of 100,000 shares of preferred and 50,000 shares of common as aforesaid. . . . It is also . . . agreed that in the event of the reduction of the interest of the said James A. Dougherty in said stock as aforesaid, the amount of such reduction shall be divided between the remaining parties to this agreement on a pro rata basis, to wit, one-half ($\frac{1}{2}$) thereof to first party and one-fourth ($\frac{1}{4}$) thereof each to Helen R. Heath and F. L. Neuer.''

Plaintiff alleged in his complaint that pursuant to the agreement and a permit issued by the Corporation Commissioner 100,000 shares of said common stock were issued in the name of Cross and were deposited in escrow; that he (plaintiff) ''did assist in the financing of the corporation through the sale of its capital stock and did through his own efforts sell in excess of 100,000 shares of the preferred stock and in excess of 50,000 shares of the common stock of Sunset Golf Corporation, and under the terms of said agreement long past became entitled to have 33,333$\frac{1}{3}$ shares of the common stock of said Sunset Golf Corporation transferred to his name free of the purported trust, as provided in said agreement.'' Plaintiff alleged further that the term for which said shares were to be pooled and voted as a unit had expired. (A blank space was provided in the agreement for stating the period for which the pooling and voting arrangement should remain in effect, but that space was not filled in.)

The answer of defendants admitted the making of the agreement, the issuance of the permit, and the depositing of said shares in escrow. The answer also admitted that plaintiff did sell and assist in the sales of stock. As a special defense defendants alleged that by reason of paragraph 16 of the contract of December 31, 1926, all of the shares of stock which plaintiff seeks to have transferred to him are claimed by him as commission for selling and assisting in the sale of stock authorized to be issued under the permit of the Corporation

Commissioner; that at the time plaintiff sold or assisted in the sale of said stock he was not a licensed broker, agent, or salesman holding a license or certificate from the Corporation Commissioner authorizing him to act as such for the sale of securities; that by reason thereof said agreement was illegal insofar as it was an agreement to transfer or vest in plaintiff any shares of stock as compensation for selling or assisting in the sale of stock; that the agreement was in violation of the permit; and that to require Cross to transfer any of the stock to plaintiff would be requiring him to act in violation of law and the permit. As a further special defense defendants alleged that plaintiff's alleged causes of action were barred by laches, in that, at all times since the execution of the agreement, a period of over 15 years, plaintiff with full knowledge of the provisions of the contract had not asserted that the pooling or voting provisions were void.

The permit issued by the Corporation Commissioner provides in part that the corporation was authorized to sell and issue 200,000 preferred and 200,000 common shares of its capital stock as follows: 200,000 shares of preferred and 100,000 shares of its common capital stock in units of one share of preferred and one-half share of common stock at $1.00 per unit; that as often as a unit was sold the corporation was authorized to issue one-half share of common stock, not exceeding an additional 100,000 shares, to Cross in consideration for the transfer of said lease to the corporation; that the total commission and expense connected with the sale of the shares should not exceed 20 per cent of the selling price; that no commission should be paid "in connection with any sale made within this state except to a broker or agent holding a certificate from the Commissioner of Corporations, then in effect, authorizing him to act as applicant's agent"; that all certificates evidencing any share issued to Cross for the transfer of the lease should "be forthwith deposited with a depositary . . . to be held as an escrow pending the further order of said Commissioner . . . and that while said certificates shall be so held the holder of the shares evidenced thereby shall not sell . . . or otherwise transfer . . . such shares, until the written consent of said Commissioner shall have been obtained so to do."

When promotion stock is referred to herein the reference

will be to the 100,000 shares of stock held in escrow in the name of Cross.

The court found, in part, that in March, 1926, Cross acquired an option to lease certain property for the purpose of erecting golf courses on 306 acres of the property covered by the option; that said option was acquired and held by him for himself and R. E. Heath as equal owners; that on May 12, 1926, the plaintiff advanced to Cross $3,000 which Cross agreed to repay by purchasing and delivering to plaintiff ''$5000 of the capital stock'' of a corporation to be formed to operate the golf courses, and by paying to plaintiff a sum equal to 20 per cent of the first dividends received by Cross on the stock issued to Cross in exchange for the lease until plaintiff thereby received $500, and by paying to plaintiff in addition to said two payments a sum equal to the dividends received by Cross on 500 shares of the stock (the period of time was not stated); that Cross delivered said ''$5000 of'' said stock to plaintiff; that on May 20, 1926, Cross acquired a lease to said property covered by said option, and that although said lease was taken in the name of Cross as lessee it was acquired and held by him for himself and R. E. Heath or the nominees of R. E. Heath as equal owners, and that plaintiff had no interest therein; that plaintiff was at all times familiar with the provisions of the permit; that subsequent to the issuance of the permit Cross transferred the lease to the corporation, and the corporation in exchange therefor issued in the name of Cross certificates evidencing an aggregate of 100,000 shares of common stock of the corporation, and the certificates have been and are now held in escrow subject to the terms of the permit; that no written consent had ever been given by the Corporation Commissioner to transfer any part of the stock in escrow or to release any part of the stock from escrow; that said option and lease were acquired and held by Cross as owner of one-half interest therein and as trustee for R. E. Heath and F. L. Neuer as to the remaining one-half; that the 100,000 shares of common stock issued in exchange for the lease were to be owned by the same persons in the same proportions; that Helen R. Heath and F. L. Neuer were designated by R. E. Heath to receive, hold and own his interest therein as his nominees; that Cross did not acquire or hold said option or lease or

said promotion stock or any interest therein as trustee for plaintiff, and that plaintiff never at any time had any right, title or interest therein; that F. L. Neuer advanced money to defendants Cross and R. E. Heath to assist in financing said golf promotion, and said defendants agreed that in consideration thereof she should receive from the interest of R. E. Heath "11,000" shares of said 100,000 shares, leaving 88,900 shares; that plaintiff represented to defendants Cross and R. E. Heath that he could sell the stock of said corporation, and the defendants, relying upon said representations of plaintiff, agreed with plaintiff as provided in paragraph 16 of said agreement that in consideration of and upon the sale by or through plaintiff of 100,000 shares of preferred and 50,000 shares of said common stock, said plaintiff would be entitled to one-third of the remaining 88,900 shares, subject to reduction as provided in said paragraph 16 upon failure of plaintiff to sell said 100,000 shares of preferred and 50,000 shares of common stock; that the sole consideration for the agreement that plaintiff should receive an interest in said promotion stock was the performance by plaintiff of the agreement to sell stock as provided in paragraph 16 thereof; that plaintiff purchased and sold within the State of California in excess of 100,000 shares of preferred and 50,000 shares of the common stock of said corporation; that for selling said stock plaintiff demanded and received from the corporation a commission of 15 per cent of the sales price, and also demanded of defendants, as additional compensation, one-third of the remaining 88,900 shares of stock; that plaintiff was not, at any time herein mentioned, a broker, agent or salesman holding a certificate issued by the Corporation Commissioner authorizing him to sell securities; that the shares of said stock plaintiff is seeking to have transferred to him, would be compensation to him for selling securities; that it was unlawful and a violation of the permit for plaintiff to sell the securities, for compensation, without such a certificate; that it was unlawful for said corporation or the defendants to pay or agree to pay plaintiff any compensation for selling said securities without such a certificate; that it was plaintiff's duty to apply for and obtain the necessary certificate to act as broker, agent or salesman and that he, through his own neglect, failed to do so; that defendants, at the time of executing said agreement and at all other times until Au-

gust 18, 1942, believed that plaintiff was legally authorized to sell said securities; that in agreeing to pay plaintiff compensation for selling said securities the defendants acted in good faith and under the belief that plaintiff had obtained legal authority to enable him to sell said securities and receive compensation therefor; that the purposes of said pooling and voting provisions of said agreement are legal and valid and not opposed to public policy; that while said stock is in escrow in the name of Cross he is the only person who can vote or give a proxy to vote said stock and said agreement is not a proxy; that the period of twenty-one years from December 31, 1926, is a reasonable time for the duration of the agreement for pooling and voting of said stock, in the absence of any fixed termination date; that said promotion stock was not issued pursuant to said agreement but was issued pursuant to said permit; that plaintiff was elected president of the corporation in 1927 and continued to act as such until February, 1942, when he was not reelected; that during all of the time while plaintiff was president the promotion stock was voted by Cross in accordance with the wishes of the majority of holders of beneficial interests in said stock; that prior to July, 1942, plaintiff and defendants had treated said pooling and voting provisions as being valid.

The judgment was that the provisions of said agreement, that plaintiff have and recover an interest in said promotion stock, are contrary to law and the provisions of the permit; that plaintiff has no right, title or interest in said stock; that said pooling and voting provisions are valid for twenty-one years from December 31, 1926, but may be terminated by the holders of a majority of the beneficial interests therein, Cross, Helen R. Heath, and R. E. Heath, administrator of the estate of F. L. Neuer; that said pooling and voting provisions are not a proxy and do not unlawfully suspend the power of alienation of property; that defendants owe plaintiff no duty under said agreement; and that plaintiff has no standing to question the validity of any of the provisions of said agreement.

One of plaintiff's contentions is that the trial court erred in finding that the sole consideration for plaintiff's interest in the promotion stock was performance by him of the agreement to sell stock as provided in paragraph 16 of the

agreement. Cross wrote a letter on April 13, 1926 (before the lease was obtained), to plaintiff, who was then in Portland, Oregon, stating that the option had been obtained, and stating the estimated cost of constructing the golf course, the plans for developing it, and that, "Naturally we are counting on your support," and "We don't want to rush you but quick action is imperative and we both want you in with us." On May 12, 1926, plaintiff paid $3,000 to Cross, and Cross gave him a writing signed by Cross to the effect that Cross would pay the sum of $5,000 subscribed by plaintiff for capital stock of the corporation which was to be formed and would pay other amounts as above stated in the findings of the court. On May 20, 1926, the lease was obtained. Soon after plaintiff had paid the $3,000 he went to Europe. He returned in September or October of 1926, and soon thereafter had a conversation with Cross or Heath or both of them concerning the sale of the stock. Some of the testimony concerning that conversation is stated hereinafter. Plaintiff was not licensed to sell securities. The second recital paragraph of the contract states that Cross acquired the lease as trustee for "himself and said second parties [plaintiff being one of the second parties], said second parties having assisted first party financially and otherwise in acquiring said lease and in promoting the Sunset Golf Corporation." Paragraph 1 of the contract states that Cross declares that he acquired the lease as trustee for "himself and said second parties as hereinafter set forth," and that the promotion stock shall be held by him in trust for "all of the parties hereto and upon the terms and conditions hereinafter set forth." Paragraph 3 states that "except as hereinafter provided" the promotion stock shall be held by Cross as trustee for all of the parties in certain proportions, including one-third for plaintiff, "subject, however, to the conditions hereinafter stated." Paragraph 4 states that cash dividends shall be distributed to said parties in certain proportions, including one-third to plaintiff. Paragraph 5 states that when the promotion stock is released from escrow Cross shall distribute it, with the exception of 11,100 shares (which is held for F. L. Neuer), to said parties in certain proportions, including one-third to plaintiff. Paragraph 6 states that the equitable title to said 11,100 shares shall be vested in said parties in certain proportions, including one-third to plaintiff. Paragraph 7 states that all stock dividends

declared on the promotion stock shall be held in escrow and when released from escrow shall be distributed to the parties in the same proportions that the promotion stock is to be distributed. It is to be noted therefore that paragraphs 3, 4, 5, 6 and 7 state specifically that the interest of plaintiff in the promotion stock, and cash and stock dividends thereon, is one-third thereof, subject to certain conditions. Paragraph 16, quoted above, was a specific reference to the consideration for plaintiff's interest in the promotion stock. It was there stated that plaintiff's interest "was acquired by him in consideration of his agreement . . . to actively assist in the financing of said corporation through the sale of its capital stock, the said James A. Dougherty agreeing to assist said company in selling its stock" until not less than 100,000 units of the stock had been sold. It was stated further therein that if plaintiff should fail or refuse or be unable "to assist actively in the sale of said stock" before a total of 100,000 units had been sold then his interest should be reduced proportionately. The consideration for plaintiff's interest, according to the language of paragraph 16, was his agreement "to actively assist in the financing of said corporation through the sale of its capital stock." The agreement did not state that he should sell stock. Plaintiff could have actively assisted in financing the corporation through the sale of its stock in various ways without actually selling stock. As an officer of the corporation he could have actively assisted in such financing by supervising the office, the stock salesmen, the advertising, and the correspondence. Furthermore, he could have complied with the provisions of paragraph 16 by purchasing the required quantity of stock himself. The assistance he actually rendered consisted of: The purchase by himself of 49,198 units of the stock; the sale to various persons of 72,680 units, wherein he was the salesman; the sale to his relatives of 15,976 units, wherein either Cross or Heath acted as salesman; and the sale to his friends of 7,804 units, wherein either Cross or Heath acted as salesman. The total number of units purchased by him, sold by him, and sold through his efforts was 145,658. The contract was not illegal. The fact that plaintiff did more than was required of him by the agreement should not invalidate the agreement. Plaintiff was president of the corporation from April, 1927, until

February, 1942, and during that period of approximately fifteen years no question was raised as to whether plaintiff had complied with the provisions of paragraph 16. During said period and thereafter until August, 1942, the plaintiff did not know, and none of the defendants knew, that plaintiff was not licensed to sell the stock. All parties believed that plaintiff had been licensed; and he was paid $3,766.40 as commissions. The defendants were not injured by the manner in which plaintiff performed the agreement, but on the contrary they were benefited. If plaintiff had assisted in financing the corporation through the sale of stock by purchasing the whole 100,000 units himself, or so assisted in some manner other than selling some of it, he would have been entitled undoubtedly to the share of the promotion stock provided for him in the agreement. As the matter stands he purchased about one-half of the required units, and sold considerably more than one-half of the required amount. A contract should be construed, if possible, as valid and enforceable. (*Howard* v. *Adams* (1940), 16 Cal.2d 253, 256 [105 P.2d 971, 130 A.L.R. 1003].) Section 1643 of the Civil Code reads as follows: "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties."

The contract was capable of performance in a legal manner by plaintiff even though he was not a licensed broker or salesman of securities, and it should not be given a construction that it was illegal by reason of the fact that a part of it was performed in an illegal manner. (*Gardiner* v. *Burket* (1935), 3 Cal.App.2d 666, 670 [40 P.2d 279].)

Respondents (defendants) sought to show from conversations between plaintiff and defendants that the consideration for plaintiff's interest in the promotion stock was the selling of stock by plaintiff. Plaintiff testified that when he returned from Europe that only 100 shares of stock had been sold and that he said to Cross (and perhaps to Heath), "I did not think they could sell stock by advertising on billboards or newspaper advertising; that we had to contact people, and they said, 'Why don't you sell it?' and I said I thought I could in a short time." Cross testified concerning that conversation with plaintiff that, "Mr. Dougherty

came to me and said, 'I think I should have some of that promotion stock,' and I said, 'Mr. Dougherty, I cannot agree to give you any part of that promotion stock without first consulting with Mr. Heath.' '' Cross testified further that plaintiff and Heath subsequently conferred with him about the matter and Heath said he had agreed with plaintiff and made the agreement that if plaintiff sold 100,000 shares he should receive one-third. Heath testified that the ''conversation was that he enter into an agreement with us to sell a specified amount of stock, $100,000.00 worth of stock, and he said he wanted his commission for the sale of stock as permitted by the Commissioner of Corporations. He also said that he wanted a share of the 100,000 shares of the common stock that had been authorized to be issued to Mr. Cross''; that he was entitled to some of the promotion stock, ''that he would have certain specified obligations on the selling of that amount of stock.'' The conversation was not such that it should be concluded that the sole consideration for plaintiff's interest was his agreement to sell stock. The written agreement, specifically stating the consideration, was made after the conversation, and the agreement did not recite, in stating the consideration, that plaintiff should sell stock. Furthermore, the contract itself in its second paragraph states that the lease was acquired by Cross ''as a Trustee for the benefit of himself and said second parties, said second parties *having assisted first party financially and otherwise* in acquiring said lease and in promoting the Sunset Golf Corporation.'' (Italics added.) As above noted, plaintiff advanced $3,000 to Cross before the lease was acquired and before the corporation was formed. In this suit plaintiff is not seeking to recover commissions; he is asking merely that the respondent Cross, who has declared himself a trustee for the appellant's benefit, be held to the agreement, by which he promised to share with the appellant and other associates the block of stock which he secured for transferring the acreage to the Sunset Golf Corporation.

The conduct of the parties clearly indicates that they understood the agreement in the sense in which we have construed it. When plaintiff made sales of stock he was paid cash commissions of 15 per cent of the selling price. As heretofore stated the total amounted to $3,766.40. If plaintiff

had been bound by the agreement to personally sell stock, as defendants contend, his compensation, if it be called that, would have been payable in promotion stock. He would not have been entitled to receive cash commissions. The payment of such commissions without objection was a clear recognition that the sales which plaintiff made personally constituted services which were not covered by the agreement. ██ The practical construction which the parties placed upon the agreement is persuasive evidence as to its true meaning.

██ The trial court erred in finding "that the sole consideration for the agreement that said plaintiff should have and receive an interest in said promotion stock was the performance by plaintiff of the agreement to sell stock of the Corporation as provided in paragraph 16 thereof."

██ Another contention of plaintiff is that the agreement created a proxy for the voting of plaintiff's interest in the stock and that such proxy was void after eleven months. The stock certificates were and are of record in the name of Cross.

Section 312 of the Civil Code, in effect at the time the agreement herein was made, provided in part: "At all elections . . . in corporations formed for profit there must be a majority . . . for the transaction of business. Every person acting therein, in person or by proxy or representative,. must be a member thereof or a stockholder, *having stock in his own name on the stock-books* of the corporation at least ten days prior to the election." (Italics added.) Said section 312 of the Civil Code was amended in 1929 and then provided in part that "the board of directors may fix a time . . . as a record date for the determination of the shareholders entitled . . . to vote" at any meeting of the shareholders and that "*only shareholders of record* on the date so fixed *shall be entitled . . . to vote* at such meeting. . . ." (Italics added.) In 1931 the provisions of the Civil Code relating to "Corporations" were superseded by the "General Corporation Law." (Stats. 1931, p. 1762; Civ. Code, § 277.) The provisions of said section 312 of the Civil Code, as amended in 1929 just referred to, were included in the "General Corporation Law" as section 318 of the Civil Code, and said section 318 has not been amended.

Section 321b of the Civil Code, in effect at the time the agreement herein was made, provided in part: "At all meetings of stockholders . . . only the stockholders . . . actually

present shall be entitled to vote on any proposition . . . unless proxies from absent . . . stockholders . . . shall be held by some person . . . present at such meeting. . . . Every such *proxy must be executed in writing by the . . . stockholder himself, or by his duly authorized attorney. . . .''* (Italics added.) Said section 321b of the Civil Code was superseded in 1931 in part by section 321 of the Civil Code as a part of the ''General Corporation Law.'' Said section 321 as enacted in 1931 provided in part: ''Every person entitled to vote . . . shall have the right to do so either in person or by an agent or agents *authorized by a written proxy executed by such person* or his duly authorized agent. . . .'' (Italics added.) Said section 321, just referred to, has not been amended.

In other words, the Civil Code provided in substance at the time the agreement was made, and has provided in substance since that time, that only a shareholder of record was entitled to vote, and that only a person who was entitled to vote, i. e., a shareholder of record, could execute a proxy. Cross, being the holder of record of the promotion stock, was and is the only one who could give a proxy for said shares.

The agreement provides that while the stock is held in escrow Cross ''shall vote the same as a majority of the parties shall agree.'' The stock is still in escrow and Cross, being the holder of record of the promotion stock, is the only one qualified to give a proxy for said shares. The agreement is not a proxy issued by the beneficial owners to Cross. His authority to vote the stock is derived from legal ownership thereof of record on the books of the corporation, although the manner in which it is to be voted is subject to the terms of the agreement.

As above noted, a blank space was provided in the agreement which presumably was to be filled in when the parties agreed upon a period for which the agreement was to be operative. This space was not filled in. The agreement was specific in providing that the voting arrangement would continue while the stock remained in escrow. When it came out of escrow it would stand of record on the books of the corporation in the names of the various owners. It would appear from the agreement that there was a meeting of the minds of the parties to the effect that the agreement would

be operative as long as the stock stood in the name of Cross, namely, while it remained in escrow, but that is the only period of time specified in the agreement for its duration. From the agreement itself it would not appear that the parties ever came to an understanding as to the period for which the voting agreement would remain in effect after the stock was released from escrow and issued in the names of the several owners. There was no evidence that any such period had been agreed upon or that the failure to insert a date in the blank space resulted from mistake or inadvertence. It is clear that the parties intended to place a definite limit of time upon the effective life of the agreement and that they failed to do so. The court found "that the period of twenty-one years from December 31, 1926, is a reasonable time for the duration of the agreement for pooling and voting of said stock, in the absence of any fixed termination date and that such agreement may be terminated at any time by the vote of the holders of a majority in interest of the beneficial interests therein." We think the case is not one in which it can be held that the agreement was to remain in effect for a reasonable time, for it is apparent that the parties intended to limit its life to a period of years and failed to do so. It would follow from these views that the voting arrangement is valid and will be effective as long as the stock stands in the name of Cross and remains in escrow but that it will not be effective thereafter. This result follows not alone from a construction of the agreement but also from the legal aspects of the situation. If the agreement should be construed as intended to be effective after the release of stock from escrow and its transfer into the names of the several owners, it would fall within the holding in *Smith* v. *San Francisco & N. P. Ry. Co.* (1897), 115 Cal. 584 [47 P. 582, 56 Am.St. Rep. 119, 35 L.R.A. 309], and the authority which each of the several owners would give to the others to determine how the vote should be cast would amount to nothing more than a proxy. Considered as a proxy from the record owners of the stock to Cross, the agreement would specify no period for its duration. Section 321b of the Civil Code, as in force at the time the agreement was executed, provided that no proxy would be valid after the expiration of eleven months from the date of its execution, unless it specified the length

of time for which it would continue in force, "which must be for some limited period, and in no case to exceed seven years from the date of the execution of such proxy" and it further provided that every proxy should be revocable at the pleasure of the person executing it. The proxy, even if unrevoked, would not have been valid for more than eleven months after the date of the agreement. It follows that the agreement for voting the stock will become wholly inoperative if and when the stock is released from escrow and is placed in the names of the several stockholders. (*Simpson* v. *Nielson* (1926), 77 Cal.App. 297 [246 P. 342].)

There are no other points discussed in the briefs which require decision.

Plaintiff is entitled to a one-third interest in said 100,000 shares of promotion stock, subject to the provisions of said agreement with reference to the interest of F. L. Neuer in 11,100 shares thereof, and subject to the provisions of said agreement with reference to the holding of said stock in trust and the pooling and voting provisions of the agreement which are and will remain valid until said stock is released from escrow by the Commissioner of Corporations; thereafter said pooling and voting provisions will be of no force or effect.

The judgment is reversed and the superior court is directed to enter a judgment in accordance with the views herein expressed.

Desmond, P. J., and Shinn, J., concurred.

A petition for a rehearing was denied October 9, 1944, and respondents' petition for a hearing by the Supreme Court was denied October 30, 1944.