[L. A. No. 21617. In Bank. Feb. 20, 1951.]

LE ROY D. OWEN, Appellant, v. EDWARD T. OFF et al., Respondents.

752

Morrow & Trippet and F. B. Yoakum, Jr., for Appellant.

Gibson, Dunn & Crutcher, Ira C. Powers and Sherman Welpton, Jr., for Respondents.

Fred N. Howser, Attorney General, T. A. Westphal, Jr., Deputy Attorney General, Heller, Ehrman, White & McAuliffe, Adams, Duque, Davis & Hazeltine, B. J. Feigenbaum and Orrick, Dahlquist, Neff & Herrington, as Amici Curiae on behalf of Respondents.

SHENK, J.—In an action to recover a commission for the sale of certain securities on behalf of the defendants summary judgment was entered in their favor. The plaintiff appealed.

It is alleged in the complaint that the defendants had engaged the plaintiff to find a purchaser for and to sell, or effect the sale of, their 1,275 shares of stock in the Figueroa Building Corporation, and had agreed to pay him a specified commission; that through the plaintiff's efforts a sale of the stock was effected to the Greene-Haldeman Company, but that no commission was paid. In the defendants' answer it is admitted that the plaintiff was engaged to endeavor to sell the stock owned by them. It is also alleged that an offer for the purchase of their stock had been submitted to the defendants by the plaintiff on behalf of the Greene-Haldeman Company, that the offer was refused, and that a later offer by the same company was accepted as a result of independent negotiations after the agreement with the plaintiff had expired.

The defendants' motion for summary judgment was based on their attorney's affidavit which disclosed the plaintiff's

admission by deposition that he was not licensed as a broker or agent under the Corporate Securities Act. An amended answer was filed in which this fact was alleged as an additional defense on the theory that the agreement was illegal and therefore unenforceable.

In a counteraffidavit on the motion the plaintiff did not deny the defendants' averments but stated that he was a duly licensed real estate broker; that in 1944 he was employed to sell the Figueroa Street Building but before he could find a purchaser it was decided for tax purposes to sell the stock in the Figueroa Building Corporation which owned the real property; that the defendants owned approximately 91 per cent of the stock; that on March 5, 1945, he was employed to sell the stock; that about May 16, 1946, he found a "purchaser ready, willing and able to purchase" the stock; that the sale was "a single and isolated transaction" insofar as the plaintiff was concerned since he was a real estate broker and not engaged in sales of stock or other types of securities; and that the sale of the stock was to be made by him "on behalf of" the defendants, who were the bona fide owners thereof.

The summary judgment for the defendants was based on the foregoing facts appearing from the pleadings and affidavits.

The plaintiff does not challenge the general rule that when a statute enacted for the protection of the public requires a license for the doing of certain acts and imposes a penalty for violation, a contract to perform such acts entered into by an unlicensed person is illegal and will not be enforced. He contends that he was not required to be licensed to engage in the transaction involved.

When the events took place, the Corporate Securities Act of 1917 (Stats. 1917, p. 673) as amended (Deering's Gen. Laws, 1943, vol. 2, Act 3814), was in effect. The licensing requirement is found in section 6 (now Corp. Code, § 25700) which states: "No person or company shall act as an agent or broker until such person or company shall have first applied for and secured from the commissioner [of corporations] a certificate, then in effect, authorizing such person or company so to do. . . ." Section 2(a) (now Corp. Code, §§ 25005-25006), defines "agent" and "broker." By section 2(a) 9 the word "agent" includes every person or company employed or appointed by a company or broker or any other person, who either as an employee or otherwise, for a compensation,

sells, offers for sale, negotiates for the sale of or takes subscriptions for any security. Section 2(a) 10 defines the word "broker" as every person or company, other than an agent, who engages in the business of selling, offering for sale, negotiating for the sale of, or otherwise dealing in any security issued by others.

The plaintiff contends that neither an agent nor a broker is required to be licensed to effect sales of securities "on behalf of" the owner. He relies on the following language of section 2(c) (now Corp. Code, §§ 25150-25152):

"Except as herein expressly provided, the provisions of this act shall not apply to the sale of any security in any of the following transactions:

1. [Judicial sales]
2. [Sales by pledgees or mortgagees]
3. The sale of securities when made by or on behalf of a . vendor not the issuer or underwriter thereof who, being the bona fide owner of such securities disposes of his property for his own account . . ."

It is argued that the introductory phrase in that section, "Except as herein expressly provided" does not refer to the remainder of the act, but is confined to section 2 in which it appears. ▮ The meaning of the term "herein" is determined by the context of the statute in which it is used. (See *In re Pearsons,* 98 Cal. 603, 608 [33 P. 451].) ▮ Here it is clear that the word refers to the entire act. If the reference were to section 2, the language would be meaningless since no exceptions appear in that section. The all-embracing application is compelled by the manifest purpose of the act which discloses a comprehensive scheme for controlling the issuance and sale of corporate securities. It is also indicated in the codification of section 2(c). In rephrasing the section for inclusion in the Corporations Code there is substituted for the words "Except as herein expressly provided," the phrase: "Except as expressly provided in this division." The reference is to division 1, title 4 of the Corporations Code (§§ 25000-26104; Stats. 1949, ch. 384, p. 698) which comprises all of the Corporate Securities Act. It is therefore significant that the intended application of the word "herein" in section 2(c) is likewise to the entire act.

It is not questioned that the defendants were the bona fide owners of the stock. It is the plaintiff's contention that since by section 2(c) 3 the provisions of the act are inapplicable to a sale "on behalf of" such owners the licensing provisions

do not apply to agents or brokers negotiating such sales. The statement is obviously a *non sequitur* when the proper effect is given to the exception in section 2(c). Since the language of exception embraces a reference to the entire act, it becomes a matter of emphasis that other provisions of the act were to remain effective. Especially it is apparent that the language did not release requirements for the licensing of a person employed as a compensated agent or as a broker to sell stock for an owner. Not all sales are of original issues, but a large proportion of those conducted on the stock exchange and privately are sales of owners' stock. To apply the language as here invoked would be to place obstructions in the application of the salutary provisions of the act and defeat in large part the legislative objective in enacting requirements for the licensing of agents and brokers. ■ It must therefore be concluded that the language of section 2(c), insofar as material here, releases individuals or companies from obtaining a broker's or agent's license when making sales of their owned stock without such agency. It cannot be deemed to release a compensated agent or a person acting as a broker from conforming with the statutory requirements.

■ It is also urged that the plaintiff, in the conduct of a single or isolated transaction should not be deemed to be subject to the licensing requirements. Reliance is on section 2(a) 10 defining a broker as one who engages in the "business" of selling securities; on a general rule that an isolated transaction by one acting as a broker will not prevent recovery of the commission (30 A.L.R. 858; 42 A.L.R. 1230; 118 A.L.R. 657) ; and on the omission from the Corporate Securities Act of a provision similar to that in the Real Estate Act (Bus. & Prof. Code, § 10134) which expressly subjects to the licensing provisions a person who for compensation conducts a single transaction.

It may be assumed, as insisted by the plaintiff, that he was not in the business of selling securities and that he did not act in the capacity of a broker as defined in the Corporate Securities Act. However, it is incontrovertible that he was employed by the defendants for compensation to sell their stock. The Corporate Securities Act requires the licensing of all such compensated agents. It does not admit of an exception as to a transaction by a person who has been employed for compensation to sell stock. On the other hand the Real Estate Act provides for the licensing of brokers and of salesmen who are employed by brokers, and exempts certain designated

services and persons. (Bus. & Prof. Code, § 10130 et seq.) The cases collected in the notes hereinabove cited to support the general rule invoked .deal in the main with real estate transfers. It may well be that, because of such a rule and lest an agent, as distinguished from a broker or salesman, be deemed excluded when acting in a single, although compensated, transaction the Legislature inserted in the Real Estate Act the express inclusion of a single transaction not otherwise exempted. But it does not follow that the omission in the Corporate Securities Act indicated a contrary intent as to a single transaction in the case of stock sales. It could also be argued that the Legislature deemed the matter covered without the necessity of more express language than the definitions of brokers and agents in connection with the licensing requirements. This is more persuasive since as stated the language expressly covers all compensated agents. ██ The policy and purpose of protection to the public which underlies the enactment precludes exceptions neither expressly included nor plainly implied. ██ The plaintiff admittedly was a person employed by the defendants for compensation to sell or negotiate for the sale of the stock. He was therefore an agent as defined by the act and was required to procure a license.

Cases in this state relied on do not establish exceptions as to single transactions under the Corporate Securities Act. The services performed by the plaintiff in *McKenna* v. *Edwards,* 19 Cal.App.2d 327 [65 P.2d 810], were held not of the character covered by the provisions of the act. Similarly in *Dougherty* v. *Cross,* 65 Cal.App.2d 687 [151 P.2d 654], the court held that the services contemplated by the agreement were by way of financial assistance, that personal stock sales by the plaintiff were not within the agreement and so recognized by the parties, and that the compensation called for by the agreement could be recovered.

On the other hand, where the services have been deemed within those defined by the act, it has been held that a single transaction could not legally be conducted without first obtaining the required permit. (*Van Wyke* v. *Burrows,* 98 Cal. App. 415 [277 P. 190] ; *Rhode* v. *Bartholomew,* 94 Cal.App.2d 272 [210 P.2d 768].) In this connection, except in regard to singleness, there is no contention that the nature of the services performed by the plaintiff, or of the agreement as to compensation, placed the matter beyond the purview of the act.

From the foregoing it is concluded that the plaintiff could not have acted legally as agent of the defendants without a license from the corporation commissioner whether the transaction was single or otherwise. Since the parties' contract purported to compensate him for his services as an agent in the sale of the stock, it was unenforceable.

The judgment is affirmed.

Gibson, C. J., Traynor, J., and Spence, J., concurred.

CARTER, J.—I dissent.

It is conceded that plaintiff's negotiation for the sale of the stock was a single and isolated transaction; that he was not engaged in the business of selling stock. The almost universal rule is that a license is not required under broker licensing acts for such a transaction, unless it is expressly included in the act; and therefore lack of a license does not bar recovery of a commission. (See cases cited 30 A.L.R. 858; 42 A.L.R. 1230; 118 A.L.R. 657; 169 A.L.R. 783; 12 C.J.S., Brokers, § 67, p. 156.) And that rule has been recognized in this state. In *Haas* v. *Greenwald,* 196 Cal. 236 [237 P. 38, 59 A.L.R. 1493], a sale of real estate was involved, thus invoking the Real Estate Brokers Act. The isolated transaction exception rule was urged, but the act expressly included such transactions, and, therefore, recovery of a commission was not allowed. But, the court stated, after referring to the isolated transaction rule (p. 244): "This argument, with the authorities which are cited in support of it, might have *some cogency but for the express and unmistakable terms of the statute to the contrary.* . . . The authorities cited in support of the appellant's position in this regard do not sustain it, for the reason, as is well illustrated by the case of *Miller* v. *Stevens,* 224 Mich. 626 [195 N.W. 481], mainly relied upon by appellant, that the statute under review in said decision *omitted this very provision* which our statute contains, rendering a single act of the character defined, for a compensation, sufficient to constitute the person performing it a real estate broker." (Emphasis added.)

The majority opinion flies squarely in the face of this rule for nowhere does the broker's license law expressly make it applicable to a single, isolated transaction. On the contrary, from the act, the implication clearly excludes isolated deals, for, as stated in the majority opinion, sales made on behalf of

a bona fide vendor of his own stock are exempted from the act. (Stats. 1917, p. 673, § 2(c).)

For the reason above stated, I would reverse the judgment.

Edmonds, J., and Schauer, J., concurred.

Appellant's petition for a rehearing was denied March 15, 1951. Edmonds, J., Carter, J., and Schauer, J., voted for a rehearing.