[Civ. No. 15636.   First Dist., Div. One.   Feb. 19, 1954.]

BURTON H. KENNERSON, Appellant, v. SALIH BROTH-
ERS (a Copartnership) et al., Respondents.

John M. Machado and A. Andreuccetti for Appellant.

Arvin O. Robb for Respondents.

WOOD (Fred B.), J.—Plaintiff brought this action against
Salih Brothers, a partnership, and Fred M. Salih and Lee
Salih individually and as partners, upon an alleged agreement
whereby plaintiff agreed to render services in the promotion of
two corporations (Beverly Investment Co., Inc., and Burbank
Amusement Co., Inc.) and defendants agreed to deliver to

plaintiff 770 shares of the investment company and 231 shares of the amusement company, of the value of $10,010. Plaintiff, alleging that he performed but that defendants failed to perform (save for the payment of $130 on account of said shares), sought recovery of the balance, $9,880.

Defendants denied these allegations and set up the additional defense that the alleged services, if performed at all, were performed by plaintiff as a broker or agent in corporate securities without a license to act as such.

The trial court found that the parties entered into an agreement under which plaintiff became obligated to sell $130,000 par value of the stock of the two corporations, which were to receive the total consideration ($130,000) without deduction of any kind for commissions or promotion; in consideration thereof defendants agreed to deliver to plaintiff 1,001 shares of the stock of said corporations, fully paid, at the par value of $10 per share; plaintiff at no time owned or possessed a license from the state Commissioner of Corporations authorizing him in any capacity as an agent or broker to take subscriptions for shares of the capital stock of either of the corporations; at no time did plaintiff have the right under the Corporations Code to act as a person entitled to take or receive subscriptions for capital stock of a corporation and receive compensation therefor; plaintiff failed to perform his contract, in that he did not sell $130,000 par value of the stock and did not obtain from purchasers a sum in excess of $70,000.

Judgment, accordingly, was for the defendants. Plaintiff has appealed.

The several findings of fact are supported by substantial evidence.* The principal question is whether or not extrinsic evidence of certain of the facts found was admissible, in view of a letter of July 29, 1949, from defendants to plaintiff, bearing their signature as sender and his signature of acceptance.

---

*Much of the supporting evidence appears in these portions of the Reporter's Transcript and in these Exhibits: The terms of the agreement and the character of services to be rendered (Rep.Tr. 4, 15, 194, 228, 245-246, 248, 254); the character of the services which were rendered (Rep. Tr. 247, 250, 256-259; Ex.L., p. 2, lines 24-28; Rep.Tr. 76, 77, 80, 87, 89-96, 104; Ex.F. and Ex.G.); the lack of a license (Rep. Tr. 122-124, 131-132); plaintiff's services were not fully performed (Rep.Tr. 255, 277); plaintiff had stated that he had sold all of the stock and it was in reliance upon that representation that the agreement (Ex. 1) of July 29, 1949, was drafted (Rep.Tr. 262, 279-280).

That letter, insofar as pertinent to this issue, read as follows: "Mr. Burton Kennerson, San Jose, California. Dear Mr. Kennerson: This will confirm our verbal agreement, that in consideration of services which you rendered in the promotion of Beverly Investment Co., Inc., and Burbank Amusement Co., Inc., we hereby agree to pay for and deliver to you in your own name free and clear of all incumbrances, the 770 shares you are presently subscribing to in said Beverly Investment Co., Inc., and likewise the 231 shares you are presently subscribing to in Burbank Amusement Co., Inc., said subscriptions being in the total sum of $10,010.00 . . . "

Plaintiff claims it was a violation of the parol evidence rule to admit extrinsic evidence concerning the "services which you [plaintiff] rendered in the promotion . . . " of the corporations mentioned. He says this letter, signed by the parties, is a writing which integrated and expressed the agreed terms, conditions and covenants of the contract and superseded the antecedent oral negotiations, discussions and understandings of the parties. However that may be, there are several answers to the contention that the extrinsic evidence in question was inadmissible.

What did the parties mean by the expression "services which you rendered in the promotion" of the two corporations? That language is not clear and explicit. The words "services" and "promotion," in that context, have no definite and certain meaning. The parties differ as to the meaning. A court cannot resolve the conflict without the aid of extrinsic evidence. This situation is like that which obtained in *Wachs* v. *Wachs,* 11 Cal.2d 322, 325-326 [79 P.2d 1085], where the like use of extrinsic evidence was sanctioned. . (See also *Woodbine* v. *Van Horn,* 29 Cal.2d 95, 104 [173 P.2d 17]; *Universal Sales Corp.* v. *California Press Mfg. Co.,* 20 Cal.2d 751, 760-761 [128 P.2d 665]; *Union Oil Co.* v. *Union Sugar Co.,* 31 Cal.2d 300, 305-306 [188 P.2d 470]; *Barham* v. *Barham,* 33 Cal.2d 416, 422-423 [202 P.2d 289]; *MacIntyre* v. *Angel,* 109 Cal.App.2d 425, 426-431 [240 P.2d 1047].)

Added significance attaches to this ambiguity in view of the fact that the "services" in question constituted the "consideration" for defendants' promise to convey to plaintiff 1001 of their shares of the stock of the two corporations. The recital of a consideration, in a written agreement such as that here involved, is *not conclusively* presumed to be true. Section 1962 of the Code of Civil Procedure in this respect declares: "The following presumptions and no others, are

deemed conclusive. . . . 2. The truth of the facts recited, from the recital in a written instrument between the parties thereto, or their successors in interest by a subsequent title; *but this rule does not apply to the recital of a consideration*; . . . 7. Any other presumption which, by statute, is expressly made conclusive.'' (Emphasis added.) We know of no statute that negatives the exception declared in subdivision 2 of section 1962. This exception means what it says. (See *Shiver* v. *Liberty Bldg.-Loan Assn.,* 16 Cal.2d 296, 299 [106 P.2d 4]; *Mackay* v. *Whitaker,* 116 Cal.App.2d 504, 511-512 [253 P.2d 1021]; *Podesta* v. *Mehrten,* 57 Cal.App.2d 66, 70-74 [134 P.2d 38].)

Extrinsic evidence is also admissible ''to establish illegality.'' (Code Civ. Proc., § 1856; see *Lebal Co. of America, Ltd.* v. *Mastrup,* 51 Cal.App.2d 232, 233 [124 P.2d 348].) The asserted illegality was plaintiff's solicitation and sale of an original issue of shares of stock of the corporations, plaintiff not having a license so to act.

The applicable statute is the Corporate Securities Law (Corp. Code, §§ 25000-26104). It defines ''agent'' and ''broker'' in sections 25005 and 25006; provides for their regulation and licensing, sections 25700-25713; defines ''sale'' in section 25009; and declares that ''No person or company shall act as an agent or broker until it has first applied for and secured from the commissioner a certificate, then in effect, authorizing it so to do'' (§ 25700). ▪ Plaintiff's engagement to sell stock of an original issue of these corporations and his activities in finding purchasers to the extent of $70,000 worth, par value, would seem to be the work of an agent or broker as defined in this statute. ''Sale'' includes, for example, an offer to sell, an attempt to sell, the taking of a subscription, and the solicitation of a sale. (§ 25009.)

The licensing requirements of the statute seem clearly applicable, as recently interpreted in *Owen* v. *Off,* 36 Cal.2d 751, 753-757 [227 P.2d 457], and *Rhode* v. *Bartholomew,* 94 Cal.App.2d 272, 276-282 [210 P.2d 768].* The only difference in fact between the Owen and the Rhode cases and our case is that in those cases the person acting as broker or agent

---

*Plaintiff relies heavily upon *Dougherty* v. *Cross,* 65 Cal.App.2d 687 [151 P.2d 654]. That case and other cases were distinguished in *Owen* v. *Off, supra,* 36 Cal.2d 751 [227 P.2d 457]. Also, the exceptions applicable after the consummation of a joint adventure or the termination of a partnership (see *Norwood* v. *Judd,* 93 Cal.App.2d 276 [209 P.2d 24], cited by plaintiff), do not appear applicable here.

undertook to sell stock owned by his principal, whereas here it was stock of an original issue of two corporations in which the principal held a large interest, apparently a controlling interest, as stockholder. That does not appear to be a significant or differentiating feature. Plaintiff was to receive substantial compensation if he carried out his part of the bargain. Also, the stock for which he took subscriptions could be issued only by the respective corporations, not by plaintiff's stockholder-principal. Each corporation, upon accepting a subscription taken or solicited by him, accepted the benefit of the contract between these parties and in a sense made him its agent by ratification. The statute proscribes acting "as an agent or broker" without a license (Corp. Code, § 25700). "Agent" includes every person "employed . . . by a company, broker, or any other person," who "either as an employee or otherwise, for a compensation," sells, offers for sale, negotiates for the sale of, or takes subscriptions for, "any security." (§ 25005.) The language employed in the definition of "broker" is not significantly dissimilar, he being a person other than an agent who engages in such activities (§ 25006). The statute does not say, expressly or by necessary implication, that the compensation which the agent receives must be payable by the owner or the issuer of the securities sold.

The fact that plaintiff's compensation was payable by the defendant stockholders, instead of by the corporations, did not remove the contract or plaintiff's services under the contract from the impact of the statute.

Plaintiff suggests that as a director and officer of one of the corporations (Burbank Amusement Co., Inc.) he had the right to sell the stock without a license as broker or agent, citing a dictum in *San Leandro Canning Co., Inc.* v. *Perillo* (1931), 211 Cal. 482, 489 [295 P. 1026]. The dictum, at most, speaks of a duty and a right of a director to sell stock of his corporation without compensation. Plaintiff herein was working for compensation. Also, he was a director and officer of but one of the corporations whose stock he undertook to sell.

The services which plaintiff did render (all without the required license) were performed, in part, prior to the writing of the letter of July 29, 1949. It is a fair inference, therefore, that plaintiff's *unlicensed* sales activities were within the purview of the contract, an integral part of it; i.e., they were not something separate and apart from or collateral to the contract.

It is not a question solely whether the contract contemplated that plaintiff would render these services without the required license. The fact that plaintiff did render those services without such a license is a bar to recovery upon the contract. (See *Owen* v. *Off, supra,* 36 Cal.2d 751, 753 [227 P.2d 427]; *Franklin* v. *Nat C. Goldstone Agency,* 33 Cal.2d 628, 631-633 [204 P.2d 37]; *People* v. *Descant,* 51 Cal.App.2d 343 [124 P.2d 864]; *Sheble* v. *Turner,* 46 Cal.App.2d 762 [117 P.2d 23].)

We conclude, therefore, that the evidence supports both the finding of failure of plaintiff to render the agreed consideration for defendant's promise and the finding that the services which he did render were performed without the license required by law therefor.

The judgment is affirmed.

Peters, P. J., and Bray, J., concurred.