**Frank O. BITTNER, Jr., Plaintiff,**

v.

**AMERICAN–MARIETTA COMPANY, an Illinois Corporation, Defendant.**

**Civ. No. 1534–D.**

United States District Court
E. D. Illinois.

May 14, 1958.

John A. Appleman, Urbana, Ill., E. Grant Mathis, Rantoul, Ill., for plaintiff.

Robert Z. Hickman, of Bookwalter, Carter, Gunn & Hickman, Danville, Ill., Dallstream, Schiff, Hardin, Waite & Dorschel, Chicago, Ill., for defendant.

PLATT, Chief Judge.

Plaintiff, a citizen of St. Louis, Missouri, seeks to recover for his services as a "finder". The defendant company is a citizen of Illinois, and its principal office is in Chicago, Illinois.

It is alleged in the complaint that the plaintiff is entitled to be paid for his services by virtue of an alleged oral contract with the defendant to procure for the defendant a willing seller of a cement company; that the plaintiff performed the contract and the defendant purchased the Dragon Cement Company as a result of the plaintiff's services.

The defendant presents a motion for summary judgment pursuant to Fed. Rules Civ.Proc. rule 56(b), 28 U.S.C.A., based upon the pleadings, the plaintiff's deposition, and the ordinance of the city of Chicago requiring a "general broker" to have a license.

The defendant contends that a relationship of broker and client existed between the plaintiff and the defendant, and since the plaintiff was not licensed in the city of Chicago to act as a broker he cannot recover.

It is not disputed that the plaintiff was engaged in the brokerage business with Edward D. Jones Co. of St. Louis, Missouri; that the alleged contract of employment was not made in Chicago; that Dragon Cement Company is not located in Illinois; and that the plaintiff performed his services in locating a cement company outside of the city of Chicago.

From the deposition it appears that the plaintiff made an effort to locate companies available for sale and called the defendant from his St. Louis office to determine whether the defendant might be interested. The plaintiff made a trip to Chicago and informed the defendant that the Dragon Cement Company had expressed a willingness to sell if a satisfactory price could be reached.

█ The Chicago Ordinance, which was in full force and effect when the plaintiff performed his services, provided as follows:

"General Brokers

"113–1. The words 'general broker' are hereby defined to mean any person other than an employé of the principal from whom the business is done that negotiates, buys, sells, trades, leases, or handles

488

for another, on a commission basis, or on the basis of compensation in proportion to the amount of the transaction, any stocks, bonds, mortgages, loans, investment, securities, certificates of indebtedness, foreign exchange letters of credit, steamship transportation tickets, grain, provisions, produce, livestock, goods, wares, merchandise or any other commodity, article or property (except real property), whether similar or dissimilar to those herein mentioned, or acts through the medium of another licensed broker in the capacity and for any of the purposes aforesaid.

"113–2. It shall be unlawful for any person to engage in the business of, or to act in the capacity of, a general broker without first having obtained a license so to do."

Thus, the Chicago Ordinance confines its definition to any person who negotiates, buys, sells, trades, or leases for another any property. The plaintiff alleges he procured the available property. One who merely procures does not act as agent in the consummation of the sale, or have anything to do with the fixing of the price, or the terms of the sale. The principals negotiate the terms between themselves. All the "finder" is required to do is to bring the seller to the attention of the purchaser. Neither counsel for the parties nor has the court found any case in the Illinois Appellate or Supreme Courts directly in point.

■ Cities are granted the power to license brokers by the Legislature. Ill. Rev.Stat. ch. 24, §§ 23–91.

"Statutes granting powers to municipal corporations are strictly construed and any fair or reasonable doubt of the existence of the power is resolved against the municipality which claims the right to exercise it. Therefore, since a city has no power, except by delegation from the General Assembly, to impose any tax or license fee, the power to do so must be expressly granted by the legislature or necessarily implied in, or incident to, other powers which are expressly granted." (Citing cases.) City of Chicago v. Barnett, 404 Ill. 136, 138–139, 88 N.E.2d 477, 479.

" ' "Brokers" in the ordinary acceptance and meaning of the word, designate persons who solicit business generally and represent any parties who may come to them. They are sometimes referred to as middlemen or negotiators of contracts or bargains between others.' " City of Chicago v. Dollarhide, 255 Ill.App. 350, 355.

Since the statute authorizing a city to license a broker is strictly construed, there is a fair and reasonable doubt that the city has the power, either express or implied, to license one who merely procures the business for the defendant to purchase. A mere "finder" would not constitute a broker. There is no reliance upon the "finder" to perform the duties of the broker in negotiating the contract.

In New York the distinction between a "finder" and a "broker" has been recognized. In Kuffler v. List, D.C.S.D.N.Y., 144 F.Supp. 776, 778, the court held that there was a "difference between finding a business for others to do and acting as a broker in doing the business." The court there cited P. W. Chapman & Co. v. Cornelius, 2 Cir., 1930, 39 F.2d 555, where it was held that where the plaintiff brought to the attention of the defendant a party who would finance a loan but did not negotiate the loan, he would not be required to have a broker's license as provided by the statute in New York. This statute states:

"No person * * * shall bring or maintain an action in any court of this state for the recovery of compensation for services rendered * * * in the buying, selling, exchanging, leasing, renting, or negotiating a loan upon any real estate without alleging and proving that such person was a duly licensed real estate broker. * * *" Real Prop-

erty Law N.Y., Consol.Laws, c. 50, § 442–d.

To the same effect see McKenna v. Edwards, 1937, 19 Cal.App.2d 327, 65 P.2d 810.

■■ A motion for summary judgment should not be granted if there is a real issue of fact. Caylor v. Virden, 8 Cir., 1955, 217 F.2d 739. From the plaintiff's testimony in his deposition it cannot be definitely concluded that he was to negotiate the contract for the purchase of the cement company, or merely to procure the cement company, while the defendant was to negotiate the terms of the sale. By the complaint the plaintiff is attempting to collect for his services as a "finder", in which case he would not be required to have a license. Since the testimony in the deposition, for the purpose of the motion, must be interpreted favorably to the plaintiff, there is a genuine issue of fact, and the motion for summary judgment must be denied.

It is so ordered.