HOMER L. BAILEY ET AL *v.* CLINT JONES, SECURITIES COMMISSIONER

5-4163                                                 419 S. W. 2d 585

[Rehearing denied November 6, 1967; original opinion delivered May 22, 1967, Ark. 242, 668]

*Spitzberg, Bonner, Mitchell & Hays,* for appellants.

*Leon B. Catlett,* for appellee.

CARLETON HARRIS, Chief Justice, concurring. On petition for rehearing, an entirely new argument is presented by appellant. The argument is relevant to the issue in the litigation, but I do not think that it can properly be considered. For the first time, it is urged that Act 459 of 1965 was passed as a matter of enabling the Insurance Commissioner to adopt the N.A.I.C. regulations. Appellant, in its rehearing brief, says:

"Act 459 represents the legislation necessary to enable the Insurance Commissioner to adopt the N.A.I.C. regulations. The Commissioner is directed by sub-paragraph 5 of the Act to conform to the regulations adopted by the N.A.I.C. insofar as possible. * * *

"In amending Section 66-4220 (Supp. 1963) to enable the Insurance Commissioner to adopt N.A.I.C. Reg-

ulations, it was necessary to eliminate any provisions of the section which appeared inconsistent in any respect with the N.A.I.C. regulations. The provision of the former section authorizing an irrevocable proxy if coupled with an interest, appeared to be inconsistent with the provision of the Regulations, which provides that ''No proxy shall confer authority . . . to vote at any meeting other than the next annual meeting (or any adjournment thereof)'' [N.A.I.C. Regulations, Section 6 (4)] and the former provision was therefore deleted from the Act.

''The deletion of the provision relating to a proxy coupled with an interest does not mean that the General Assembly intended to invalidate all arrangements whereby the voting right is separated from a share of stock.''

This same argument is used in two *amicus curiae* briefs filed with the court on rehearing.

We have many times said that we will not consider matters that are not argued in the brief, nor will we consider, on rehearing, contentions not originally advanced. In *Bost* v. *Masters*, 235 Ark. 399A, in a supplemental opinion on rehearing, this court said:

''Appellee's petition is without merit for three reasons. In the first place, appellee did not argue in her original brief that service was obtained upon a trustee of the insurance fund, though appellants devoted considerable space in their brief to the argument that service on the fund was not obtained. Appellee's sole argument, relating to service, was to the effect that this action was brought as a class action. * *

''In other words, appellee never made the contention, now advanced, in her original brief. We have said on numerous occasions that we do not consider matters, in civil actions, which are not argued in the brief, and

any point not argued is deemed waived. [Citing cases.]''

As stated, the present position of appellant, as reflected in the quote from appellant's brief on petition for rehearing, and pertinent, because it deals with the legislative intent, was not mentioned in the original brief, nor was it mentioned in appellant's reply brief, though Act 459 of 1965 (amending the Insurance Code), construed together with the General Corporation Statute of this state, was one of the principal points relied upon by appellee for affirmance of the trial court judgment.

I reiterate that I do not feel we can properly, under our rules, and under our prior opinions, consider the argument advanced in the petition for rehearing.

CONLEY BYRD, Justice, dissenting. I dissent from the majority view for the following reasons:

1. The decision is contrary to the overwhelming weight of authority. See annotation 98 A.L.R. 2d 376, 380, which the majority opinion cites as supporting its position. The annotator in § 4 (a) there says:

"Although there is language in some cases condemning voting trusts as invalid, the view supported by the overwhelming number of cases is to the effect that a voting trust may be validly created under certain circumstances even in the absence of a statute expressly authorizing its creation."

2. The majority opinion overlooks the difference between a voting trust and a proxy when applying our proxy statutes. A proxy, or a reciprocal proxy agreement, differs from a voting trust agreement in that the proxy creates an agency whereas the voting trust does not. The difference lies in the location of the legal title. If the stock is transferred to true trustees, their right to vote it is incident to their legal title to the stock, notwithstanding the trust agreement contains terms to

govern the voting of the stock. See 159 A.L.R. 307, 98 A.L.R. 2d 376, *Bankers' F. & M. Ins. Co.* v. *Sloss,* 299 Ala. 26, 155 So. 371 (1934), and *Dougherty* v. *Cross,* 65 Cal. App. 2d 687, 151 P. 2d 654 (1944).

In the *Dougherty* case the court made the above distinction between a voting trust and a proxy and distinguished *Simpson* v. *Nielson,* 77 Cal. App. 297, 246 P. 342 (1926). The voting trust there, in existence for more than 21 years, was upheld notwithstanding a California statute providing that no proxy would be valid after eleven months from the date of execution, unless it specified the length of time for which it would continue in force (in no case to exceed seven years from the date of execution).

This same distinction between a voting trust and a proxy is recognized by the Securities Act enacted by the United States Congress and the regulations issued thereunder. 15 U.S.C.A. § 77 (b) (1) requires that a voting trust be registered with the Securities and Exchange Commission. The regulations promulgated by the Commission, 17 C.F.R. 240, 14a-2 (d), exempt voting trusts from the proxy regulations.

The Arkansas Securities Act, Acts of 1959, No. 254 §§ 13 (g) and 13 (1), contains provisions relative to the registration of voting trusts identical to those set out in the federal act, 15 U.S.C.A. § 77 (b) (1) & (4).

Since there is a basic distinction between the generally recognized definitions of "proxy" and "voting trusts," it follows that a statute regulating the use of a proxy would not apply to voting trusts.

3. Furthermore, I think the majority is placing too much emphasis on the presumed legislative intent of Act 459 of 1965 (Ark. Stat. Ann. § 66-4220 [Repl. 1966]). The act reads as follows:

" ' (1) Every proxy of a stockholder of an insurer shall be revocable at will, and this provision cannot be waived.

' (2) The revocation of a proxy shall not be effective until notice thereof has been given to the secretary of the insurer.

' (3) The Commissioner shall have the authority to regulate the solicitation of proxies by any person; to require the disclosure of information deemed relevant to an understanding of issues and matters with respect to which proxies are, or are proposed to be, solicited; to specify general requirements as to form and contents of proxies; to determine the length of time for which proxies may be effective, unless sooner revoked; to prohibit solicitations of proxies which do not comply with such rules and regulations as the Commissioner may issue hereunder, or as to which disclosures required by such rules and regulations are not made; to prohibit the making or use of false or misleading statements, or the distribution of any false or misleading material, with respect to the solicitation of any proxy or with respect to any election or election contest; and to issue such other rules and regulations respecting proxies and elections as the Commissioner may deem necessary or appropriate in the public interest or for the protection of stockholders of insurers.

' (4) Rules and regulations issued by the Commissioner under authority of this section shall be made or amended as provided in Section 26.

' (5) Insofar as may be practical, rules and regulations with respect to proxies, consents, or authorizations then currently approved or formulated by the National Association of Insurance Commissioners, or its successor organization, shall be followed.' "

At the time Act 459 was passed, the United States Congress had just amended the Securities Act to subject all insurance companies to the reporting requirements of Section 13 of the Securities and Exchange Act of 1934 (15 U.S.C. § 78m [1964]), unless the states where they were domiciled met the conditions set forth in 15 U.S.C. § 781 (g) (2) G (iii), as follows:

"The provisions of this subsection shall not apply in respect of—

"(G)   any security issued by an insurance company if all of the following conditions are met:

"(i)   Such insurance company is required to and does file an annual statement with the Commissioner of Insurance (or other officer or agency performing a similar function) of its domiciliary State, and such annual statement conforms to that prescribed by the National Association of Insurance Commissioners or in the determination of such State Commissioner, officer or agency substantially conforms to that so prescribed.

"(ii)   Such insurance company is subject to regulation by its domiciliary State of proxies, consents, or authorizations in respect of securities issued by such company and such regulation conforms to that prescribed by the National Association of Insurance Commissioners.

"(iii)   After July 1, 1966, the purchase and sales of securities issued by such insurance company by beneficial owners, directors or officers of such company are subject to regulation (including reporting) by its domiciliary State substantially in the manner provided in section 16 of this title."

The committee comment upon the Securities Acts Amendments of 1964, with reference to the above exemption, commencing at page 3021 of U. S. Code Congres-

sional and Administrative News, 88th Congress Second Session, 1964, is as follows:

"(b) *Stock insurance companies.*—The bill, as introduced, would have covered stock insurance companies meeting the statutory standards. The committee amendment [to sec. 3 (c) of bill] exempts such a company from the jurisdiction of the Securities and Exchange Commission, but only if the company is regulated under State law or the State insurance commissions in all three of the following respects:

"(1) Such insurance company is required to and does file an annual statement with the commissioner of insurance (or other officer or agency performing a similar function) of its domiciliary State, and such annual statement conforms to that prescribed by the National Association of Insurance Commissioners or in the determination of such State commissioner, officer, or agency substantially conforms to that so prescribed.

"(2) Such insurance company is subject to regualtion by its domiciliary State of proxies, consents, or authorizations in respect of securities issued by such company and such regulation conforms to that prescribed by the National Association of Insurance Commissioners.

"(3) · After July 1, 1966, the purchase and sales of securities issued by such insurance company by beneficial owners, directors, or officers of such company are subject to regulation (including reporting) by its domiciliary State substantially in the manner provided in section 16 of the Securities Exchange Act of 1934.

"This committee amendment was adopted following testimony by a number of State insurance com-

missioners and representatives of stock insurance companies who unanimously opposed the subjecting of these insurance companies to the jurisdiction of the Securities and Exchange Commission in addition to the jurisdictions of the various State commissioners. Further, these witnesses opposed departure by the bill from the doctrine embodied in the McCarran Act that the regulation of insurance companies be left to the States. The basic objection advanced by these witnesses went not to the requirements for the protection of investors for disclosure but only to the jurisdictional question.

"The State insurance commissioners through their organization, the National Association of Insurance Commissioners, testified that they recognized some validity to the contention in the commission's special study report that their procedures were primarily directed to matters concerning the protection of policyholders and to the need for some improvement in these procedures insofar as they relate to the protection of investors in the stock of these companies.

"The thrust of the testimony by these representatives of the State insurance commissioners was that they be given an opportunity to demonstrate their ability effectively to protect the investors as well as the policyholders. The committee amendment gives these State commissioners this opportunity so to do.

"The insurance regulatory authorities of all of the 50 States and the District of Columbia are members of this voluntary association, the National Association of Insurance Commissioners (NAIC), one of the major purposes of which is to achieve a substantial degree of uniformity in the regulation of the insurance business by the various States. NAIC has adopted a uniform annual reporting form, known as the convention blank (or convention form

annual statement), which, in turn,·has been adopted in every State as the required annual report form for insurance companies. An NAIC committee, under the chairmanship of Mr. Stafford Grady, insurance commissioner for California, has recently developed also a 'stockholders' information supplement' which will become an integral part of the basic form for 1964 and later years. The commissioners of each of the 50 States and the District of Columbia have advised the committee by letters that they would require insurance companies within their respective jurisdictions to file and comply with the supplement and any future revisions thereof as they are adopted by the association."

As pointed out by the majority opinion, the law on proxies in insurance companies at the time of the enactment of the Securities Acts Amendments of 1964 (Acts of 1959, No. 148, § 472), provided as follows:

"(1) Every proxy of a stockholder of an insured, unless coupled with an interest, shall be revocable at will, and this provision cannot be waived."

Obviously, before the Commissioner of Insurance of the State of Arkansas could comply with the exemption section of the Securities Acts Amendments of 1964, it was necessary for the legislature to take some action. Section 1(5) of Act 459 shows pointedly that Act 459 was intended to comply with the Securities Acts Amendments of 1964 by specific reference to and recognition of the National Association of Insurance Commissioners.

Act 459 of 1965 does not mention voting trusts. It was passed so that the laws of Arkansas would permit Arkansas's regulation of domestic insurance companies to come within the exemption of the Securities Acts Amendments of 1964, above set out. Consequently, I cannot read into Act 459 of 1965 a legislative intent to put a more stringent regulation on domestic insurance

companies, with respect to voting trusts, than that required by the Securities and Exchange Act of 1934.

4. Furthermore, I can find little distinction between the voting trust established here, whereby the beneficial owner, or *cestui que trust,* is issued a certificate of ownership while the title remains in the trustees, and that which exists in the ordinary "Massachusetts trust" or so-called "business trust." 13 Am. Jur. 2d, Business Trusts, § 1, defines the "Massachusetts trust" or so-called "business trust" as follows:

> "One of the distinctive devices by means of which individuals may combine their resources to operate a business for profit is the so-called business trust, or 'Massachusetts trust,' which may be comprehensively defined as an unincorporated business organization created by an instrument by which property is to be held and managed by trustees for the benefit and profit of such persons as may be or may become the holders of transferable certificates evidencing the beneficial interests in the trust estate. . ."

Surely this court is not finding that the many trustees operating mutual funds (such as Crown Western) are illegally holding stock in the many domestic insurance companies in Arkansas.

Therefore, I would grant the rehearing.

GEORGE ROSE SMITH and JONES, JJ., join in dissent.