Abraham N. Geller, J.
Defendant has moved at the close of plaintiff’s case to dismiss the first cause of action in the com *885 plaint on contract upon the ground that it is barred by the applicable Statute of Frauds. No such motion addressed to the alternative second cause in quantum meruit has been made.
The briefs on that question submitted by both counsel during the course of the trial, as well as independent research by the court, indicate that the answer cannot be entirely free from doubt in view of the unsettled and confusing area of law embracing that issue as affected by the nature and circumstances of this case. This is an action to recover a finder’s fee with respect to a multi-State corporate merger. Involved in the Statute of Frauds issue is a matter of conflicts-of-law theory in addition to the basic question of the applicability to a “ finder ” of the New York Statute of Frauds (Personal Property Law, § 31, subd. 10), dealing with business brokers.
Although the court has decided to deny the motion to dismiss, counsel are entitled to some statement of its reasons, which may serve to explain the rather unusual procedure proposed by the court relative to the jury’s rendition of a verdict on both causes of action. This statement may also serve a useful purpose in placing the problem in proper focus so that, if deemed advisable in the public interest, the rationale and scope of this statute may be reviewed.
It is necessary first to have a full and correct understanding of this concept of a “ finder ’ ’.
In Seckendorf v. Halsey Stuart & Co. (234 App. Div. 61, revd. solely as to Halsey Stuart & Co., 259 N. Y. 353), the court referred to plaintiff’s agreement for an “ originating commission ” and described him as follows (p. 70): “ Plaintiff was in nowise a broker. * * * He merely was a finder of this piece of business. He was to receive his compensation for finding the business and bringing the same to the attention of Rogers Caldwell & Co. and its associates. He claimed his compensation solely upon the ground that he was the originator of the business and had disclosed to Rogers Caldwell & Co. and its associates the opportunity to engage in this financing.”
In Knauss v. Krueger Brewing Co. (142 N. Y. 70), the court referred to plaintiff, suing to recover for services allegedly rendered for defendant in regard to the sale of its brewery, as not a broker “ in the strict sense of the word ” (p. 73). The court pointed out (p. 74): “ The record shows there was evidence of the employment of the plaintiff for the mere purpose of bringing the possible buyer and seller together, and with the understanding that if a sale were to result the plaintiff was to have some compensation from the defendant for his services. The plaintiff testified that he was to have nothing to do with fixing *886 the price or the terms of sale; the principals were to do that part of the business; all he had to do was to bring them together, and if through their subsequent negotiations a sale should result, the plaintiff was to be entitled to some compensation.”
Having thus clearly distinguished between Knauss ’ function in that transaction and that of a broker in the usual transaction, the court proceeded to find inapplicable a New Jersey statute — the brewery was in New Jersey — prohibiting a broker selling real estate from claiming a commission unless authorized in writing to sell the property. That distinction also led it to conclude that Knauss could recover from defendant despite his having received, unknown to defendant, some compensation from the purchaser. It held that the rule, which barred a broker from recovering any compensation from either party in the case of undisclosed employment by both of them, could not be invoked where plaintiff’s employment was solely to find a purchaser, with no participation in the subsequent sales negotiations to be carried on exclusively by the parties. The court observed that such information as was asked and given by plaintiff was incidental and preliminary in nature and purpose and merely to determine whether it was worth while to take up the matter.
The same distinction between a finder (who finds, interests, introduces and brings the parties together for the deal which they themselves negotiate and consummate) and a broker (whose duty is to bring the parties to an agreement on his employer’s terms) has been noted in all the decisions dealing with the subject (see, e.g., P. W. Chapman & Co., Inc., v. Cornelius, 39 F. 2d 555; Lindeman v. Textron, Inc., 143 F. Supp. 955; Kuffler v. List, 144 F. Supp. 776; Bittner v. American-Marietta Company, 162 F. Supp. 486). A more precise designation for a finder would appear to be an “ intermediary ” or a “ middleman ”.
The services performed by finders may vary from case to case. But their distinction from the status of a broker, if the circumstances of the particular case require such a distinction to be drawn, lies in their bringing the parties together with no involvement on their part in negotiating the price or any of the other terms of the transaction. Of course, with respect to real estate, commissions are payable only to a licensee and only when he produces a buyer who agrees to seller’s terms, unless otherwise expressly agreed.
In this case plaintiff’s evidence shows that the services performed by plaintiff’s assignor, Kidder, Peabody & Co., an investment banking firm, were those of a finder or intermediary. Albert F. Donohue, one of its vice-presidents, who handled this transaction on its behalf, performed the essential function of a *887 finder of introducing and bringing together the parties to the merger transaction. Actually, after Kidder Peabody’s assistance in a possible plan of merger had been requested by the largest stockholder of Volunteer Portland Cement Company, it was Donohue who suggested that defendant, Ideal Cement Company, be contacted, obtained authorization for such purpose, and thereafter induced and interested defendant to undertake merger negotiations. In addition, he supplied defendant with financial information concerning Volunteer and made some general suggestions, based on his knowledge of Volunteer’s activities and setup, regarding the procedure to be followed by defendant in its dealings with Volunteer. However, the evidence offered on plaintiff’s behalf shows that, though Donohue offered to go with defendant’s representatives to talk with the Volunteer people, defendant decided to handle the negotiations alone. Had Donohue been permitted to participate in the negotiations, Kidder Peabody’s status would have been that of a broker. Under these circumstances, however, it was merely that of a finder, though it rendered some incidental and preliminary services prior to the actual negotiations conducted by the principals themselves. Unless defendant presents evidence of such participation, this view of Kidder Peabody as a finder, rather than broker, in this transaction will be adhered to, insofar as such distinction, if existent, is required by the wording of the Statute of Frauds.
Perhaps it should be observed at this point that defendant’s denial of liability to Kidder Peabody is based not only on the Statute of Frauds, but also on certain factual grounds to be passed on by the jury under proper instructions at the close of all the evidence: — that there was neither contract nor any understanding on the part of defendant that it was the party which was to compensate Kidder Peabody for its services; that, after the parties had failed in two attempts to agree, Kidder Peabody abandoned this deal and acted for other and conflicting interests; and that the merger, ultimately effectuated about three years after the original introduction, was not the result of Kidder Peabody’s services but was the result of independent intervening-factors.
Our present concern is with the form of the contract for compensation upon which Kidder Peabody relies. It claims an agreement with defendant implied in fact or in a course of conduct, including a number of telephone calls, exchanges of writings, and one personal meeting. The claim is that in Donohue’s first telephone call with defendant’s president he explained why Kidder Peabody would look to defendant for payment of its *888 compensation if the deal went through, although no figure was then given. In a follow-up letter sent that same day to defendant he referred to his firm being ‘ ‘ protected ’ ’ relative to the fee, stating that he and his associates believed it should be 1%% of the consideration paid to the stockholders of Volunteer. (The consideration, paid in stock, being $22,612,500, the amount sued for in the first cause of action is 1 y2% thereof, or the sum of $339,187.50; while the amount claimed alternatively in the second cause in quantum meruit is $504,187.50.)
It is not claimed that defendant accepted that offer either orally or in writing, but rather that its subsequent request for and acceptance of Kidder Peabody’s services with knowledge that the latter expected to be paid therefor at the stated rate constituted an implied acceptance of the offer. It is clear that there was no contract, or note or memorandum thereof, signed by defendant, agreeing to pay the compensation claimed in this case.
The pertinent statute-is subdivision 10 of section 31 of the Personal Property Law which provides:
‘ ‘ Every agreement, promise or undertaking is void, unless it or some note or memorandum •-thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking * * *
“ 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures, or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. This provision shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman.”
As previously indicated, the issue in this case of the Statute of Frauds involves two questions: (1) whether the contract in suit is governed by New York law; and (2) if so, is that contract barred by subdivision 10 of section 31 of the Personal Property Law.

As to the first question:

Plaintiff has requested the court to take judicial notice that Colorado, Tennessee and Georgia do not have any statute similar to New York’s subdivision 10 of section 31 of the Personal Property Law. It is contended that the law of the place of contracting governs as to the applicable Statute of Frauds, Colorado as the place of the alleged acceptance by defendant of Donohue’s offer over the telephone and by letter, or Tennessee or Georgia as the *889 place where all the negotiations between Volunteer and defendant took place. Plaintiff argues that, the contract being valid where made, it should be enforced in any forum. But that is not necessarily the rule where different Statutes of Frauds are involved.
Although, as a matter of pleading, if plaintiff claimed that the law of New York did not apply, the complaint should have alleged where the contract was made and that it was there valid (Russell v. Societe Anonyme D. E. Aeroxon, 268 N. Y. 173), the trial court may ascertain the place of contracting from the evidence and take judicial notice of the law of that place, provided, of course, it has determined that the law of that place shall govern and not the law of the forum.
In this case, since the contract is alleged to be one implied in fact or by conduct, embracing acts and communications over a period of time and in several places, it is impossible to pinpoint the place of contracting. Donohue’s offer was made from New York to Denver by telephone and letter. There were subsequent telephone calls from Donohue in New York to defendant in various States. Their only personal meeting was in New York, at which time the arrangements were made for the first appointment with Volunteer. Since defendant’s acceptance is claimed to consist solely of its requesting and receiving the benefit of Donohue’s services with knowledge of his offer, the place of contracting would appear more likely to be New York than any other place.
The same result is reached if we apply the more modern “ center of gravity ” theory of conflict of laws, that the law of the State having the most significant contacts with the matter in dispute should be applied. The matter in dispute is the question of the applicability of a Statute of Frauds to a contract for compensation for services rendered, claimed to have been made and performed through the New York office of an investment banking firm. The place of the actual negotiations between the principals is of no significance, since our concern on this question of the Statute of Frauds is with the contract for Kidder Peabody’s compensation and not the contract of sale. The significant contacts of that contract are with New York.
Moreover, the purpose of subdivision 10 of section 31 of the Personal Property Law, as stated in the 1949 Report of the Law Revision Commission recommending its enactment, was to avoid spurious and unfounded claims for compensation by business brokers, the commission noting that they comprised a fairly numerous group in the Borough of Manhattan and that in recent years there had been a substantial number of reported cases *890 involving such claims. New York therefore has a special interest in applying its statute to such a claim when made in a court of this State by a New York broker or one basing such claim on an alleged contract for compensation originating or made through a New York office.
The court has thus concluded that the law of New York governs the validity of Kidder Peabody’s contract for compensation.
The court has not found it necessary, in view of the circumstances here present, to rely upon the general rule as to the applicability of the New York Statute of Frauds advocated by Chief Judge, then Judge Desmond, in Ms concurring opinion in Rubin v. Irving Trust Co. (305 N. Y. 288, 306-307). Adoption of such a rule would permit this problem of conflict of law relating to the Statute of Frauds to be resolved without detailed analysis of the facts and public policy involved in particular situations. Since it has been held that the New York statute, though it uses the word “ void ”, is susceptible to a procedural or evidentiary, rather than a substantive, characterization (Rubin v. Irving Trust Co., supra, p. 301), it may well be that this long-unsettled problem will shortly be decided in this State in accordance with the more modern view advocated by Chief Judge Desmond and set forth in the Restatement of Conflict of Laws (§ 602, comment a), as follows: “ If the statute of frauds of the forum requires a written agreement as a condition of bringing action on a contract of a certain sort, no action can be maintained on a foreign oral agreement even if it complies with the law of the place of contracting.”
In any event, there can be no question as to the Statute of Frauds of the forum being applicable, if substantial elements of the making of the contract also took place in that State.
As to the second question:
The remaining question is whether Kidder Peabody’s contract for compensation, which is not contained in any note or memorandum subscribed by defendant as the party to be charged therewith, is barred by subdivision 10 of section 31 of the Personal Property Law.
The answer was given in Wells v. Dent (4 A D 2d 307, 4th Dept., 1957), involving a claim for a finder’s fee. Pointing out that the statute by its plain language applied only to unwritten contracts for compensation for services rendered in “ negotiating ’ ’ a sale, purchase, etc., and that the courts of our State (citing Knauss and Seckendorff, supra) had long since recognized the difference between a contract for a broker’s commission for services rendered in negotiating a sale or purchase and *891 a contract for an originating commission for services rendered merely in bringing a buyer and seller together, that court held that the statute did not bar plaintiff’s claim, since he was not seeking to recover compensation for negotiating the transaction.
The very same question had been raised previously in the Federal court with respect to subdivision 10 of section 31, the same distinction drawn between a finder and a broker, and the same ruling made as to the statute not being applicable if the plaintiff’s services were not rendered in negotiating the transaction (Kuffler v. List, 144 F. Supp. 776).
There is no decision on this point in this Department. However, defendant argues that an obiter dictum statement in the opinion in Gibson v. Archer Productions (281 App. Div. 661) indicates that this Department would take a contrary view. The record on appeal in the Gibson case shows that Gibson was suing for the reasonable value of services rendered as a finder without any participation on his part in the negotiations between the parties. It was stated in the opinion: ‘ ‘ Though the Statute of Frauds would apply to this suit if it were brought upon an express contract, it would not constitute a defense to an action, such as this, brought in quantum meruit to recover for services rendered.”
No reliance may be placed on this dictum as to the court’s disposition of an appeal wherein the question of the applicability of the statute to a contract cause of action of a finder would be directly raised and thoroughly briefed. The court may or may not come to the same opinion, but, obviously, the dictum does not represent in any sense a determination of the point.
However, this dictum and other general language employed in various decisions regarding subdivision 10 of section 31 seem to indicate a widespread impression that it applies to any claim for commissions for services rendered in the sale of a business or business opportunity. That impression was evidently gained from general statements contained in the report of the Law Revision Commission, which omitted the word, “ negotiating ”, but pointed out the desirability of making the Statute of Frauds applicable to “ contracts for compensation for services rendered in the sale of a business opportunity, business, or interest therein.” However, the statute recommended did contain the word, “ negotiating ”, and those courts dealing directly with the problem of a finder’s fee contract have felt obliged to distinguish it, in accordance with established precedents in this State, from the negotiating services of a broker.
To some it would appear to be anomalous to hold contracts for negotiating services barred unless contained in a signed *892 writing, while permitting oral contracts for compensation of a finder. We do not know whether the Commission was aware of the distinction in the New York cases between a finder and a broker when it recommended the enactment in its present form. But we do know that there is no reference in its report to finder’s fees nor to these New York cases, and the point may have been overlooked. In any event, it appears to the court that the subject should be reviewed, so that this matter of “ negotiating ” can be cleared up, whether or not it is retained in or eliminated from the statute.
The court is constrained to hold that subdivision 10 of section 31 by its terms is not applicable to plaintiff’s cause of action on contract, unless and until defendant presents evidence raising an issue of fact as to Kidder Peabody’s rendition of services in “ negotiating ” the merger transaction, in which event the issue will be for the jury. Defendant’s motion to dismiss that cause of action on the ground of the statute is therefore denied.
As the foregoing opinion indicates, the court is mindful of the fact that, in view of the unsettled state of the law in this field, this holding may be overruled on appeal. To avoid, if possible, a retrial if it should be held on appeal that the statute is applicable to the contract cause of action, the court intends to follow a procedure with respect to the jury’s verdict, which, while unusual, might result in a verdict on the quantum meruit cause which would stand.
The jury would, in the first instance, be charged with respect to the first cause on contract and the alternative second cause in quantum meruit. They would be instructed that, if they found for the plaintiff on the first, there would be no need to consider the second, and to return with their verdict to the courtroom; but, that if they did not find for the plaintiff on the first cause, they should then, but only in accordance with the court’s instructions, consider the second and decide whether plaintiff was entitled to a verdict for the reasonable value of the services rendered, and, if so, the amount thereof.
If the jury renders a verdict for plaintiff on the second cause, there would be no problem concerning the applicability of the Statute of Frauds. However, if they render a verdict for plaintiff on the first cause, since that might on appeal be reversed on the ground of the applicability of the statute, which would require a complete retrial of the second cause, the court proposes to have the jury return to the jury room to deliberate further with respect to the second cause under careful instructions to the following effect: — that their verdict on the first cause had been duly recorded, but for certain reasons it was necessary *893 to obtain their considered verdict also as to the reasonable value of Kidder Peabody’s services; that they were to base their findings on the evidence presented on the entire question of reasonable value and on all the facts and circumstances presented to them at this trial; that their determination was in nowise to be influenced by the fact that they had found a contract rate of P/2%; that they were not bound by that figure, but could render a verdict for such amount as they deemed reasonable within the range of the testimony and in the light of all the pertinent facts bearing on reasonable value which they deemed worthy of credit.
The second verdict would have no legal effect except as an alternative to the first verdict, if the first verdict on the contract cause of action were set aside on the sole ground of the applicability of the statute.
While there may be objections to this procedure, it offers at least the opportunity to avoid a retrial, if the statute is held to apply. In any event, the verdict first rendered cannot be questioned on procedural grounds and would be completely unaffected by the procedure subsequently followed to obtain an alternative verdict on the second cause, if the jury has rendered a verdict in favor of plaintiff on the first cause. There will be nothing lost by this attempt, and, perhaps, something gained.