[Civ. No. 37076. First Dist., Div. Two. Jan. 4, 1977.]

FREDERICK OGDEN LYONS, Plaintiff and Respondent, v.
CYRIL STEVENSON, Defendant and Appellant.

596

## Counsel

William H. Hoogs for Defendant and Appellant.

Robert S. Rutledge for Plaintiff and Respondent.

## Opinion

**BRAY, J.**\*—Defendant and appellant Cyril Stevenson appeals from a judgment of the Alameda County Superior Court in favor of plaintiff and respondent Frederick Ogden Lyons.

### Issues Presented

1) Plaintiff is entitled to a commission even though he is not licensed as a corporate securities broker.

2) The evidence supports the conclusion that plaintiff acted in the capacity of a "finder" rather than a "broker."

3) The trial court properly pierced the corporate veil.

---

\*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

RECORD

A complaint for a commission filed by plaintiff Lyons against defendants Sather Gate Mortgage Company and Cyril Stevenson contains the following allegations:[1] Plaintiff is a duly licensed real estate broker who was employed pursuant to a written agreement by defendants to procure a purchaser for Sather Gate Mortgage Company. Defendants agreed to pay plaintiff a commission of 5 percent of the selling price of the mortgage company. On or about May 31, 1972, plaintiff procured Charles Heneveld and Empire Pacific Properties, Inc. to purchase the business and defendants sold the business to Charles Heneveld and Empire Pacific Properties, Inc. for $165,000. Defendants are indebted to plaintiff in the sum of $8,250.

Defendants answered and admit that the written agreement was executed and delivered to plaintiff and that the stock of Sather Gate Mortgage Company was sold to Charles Heneveld and essentially deny the other allegations contained in the complaint. For an affirmative defense defendants allege that plaintiff is not licensed to act as an agent or broker in connection with the sale of securities (Corp. Code, § 25200 et seq.) and the written agreement is in violation of section 10176 of the Business and Professions Code.

Plaintiff later filed an amendment to the complaint alleging a second cause of action against defendant containing the following allegations: At all times mentioned herein defendant was the owner of or had control of all of the issued stock of Sather Gate Mortgage Company. On May 25, 1972, plaintiff was employed by defendant to find a purchaser of said business, Sather Gate Mortgage Company. Defendant, as owner of the business, agreed to pay plaintiff a commission of 5 percent of the selling price of the business as compensation for finding someone interested in the purchase of the property. Thereafter, plaintiff did procure a purchaser whom he introduced to defendant. It was defendant who negotiated the sale of all of the stock of the business for $165,000. Defendant refuses to pay the amount owing plaintiff ($8,250).

The action was tried before the Honorable Robert L. Bostick, sitting without a jury. Thereafter, findings of fact and conclusions of law were

---

[1] Only defendant Stevenson has appealed from the judgment entered herein. Therefore "defendant" refers only to defendant Stevenson and "defendants" refers to both defendants, Stevenson and Sather Gate Mortgage Company.

filed and judgment was entered in favor of plaintiff and against defendant in the amount of $8,250, plus interest and costs.

## STATEMENT OF FACTS

On May 25, 1972, an agreement was drafted by defendant on the stationery of Sather Gate Mortgage Company and provided: "We hereby agree to sell at 15% above the Book Value, payable 5% to Fred Lyons [plaintiff]" and was signed "Cyril Stevenson, Pres."

Plaintiff, a licensed real estate broker testified as follows: When defendant indicated he wanted to sell Sather Gate Mortgage Company, he did not mention the sale of stock. After the May 25, 1972, agreement was executed, plaintiff went to see Charles Heneveld who had indicated at an earlier date that he was interested "in getting into the loan business." Plaintiff told Heneveld that Sather Gate Mortgage Company was available at the value of the assets of the company plus 15 percent. Defendant estimated the value of the assets to be $125,000. On May 31, 1972, plaintiff again saw Heneveld, who, at this time gave him a written offer to purchase "Sather Gate Mortgage Company for the amount of $125,000, the total assets of the company," plus 15 percent. Plaintiff took the offer to defendant who signed "accepted" on the offer. Thereafter, plaintiff returned a copy of the offer to Heneveld. Plaintiff stated that he did not at any time indicate to Heneveld that he was authorized to sell stock nor did Heneveld mention the sale of stock to plaintiff.

Plaintiff further testified as follows: In March or April of 1973, he learned that defendant and Heneveld had entered into an agreement for the transfer of Sather Gate Mortgage Company in February of 1973. Plaintiff did not take part in any conversations or negotiations regarding the February 1973 agreement. The only conversations plaintiff had with defendant or Heneveld after the May 31 offer was accepted was to inquire when he would receive his commission. Plaintiff stated that he did not know in what manner or form defendant and Heneveld would effectuate the transfer of Sather Gate Mortgage Company.

Defendant, the only other witness at trial, testified as follows: He is a licensed real estate broker and at one time was licensed to sell securities, but the latter license has expired. He never really gave "a thought" to whether plaintiff had a license to sell securities because at the time he was contemplating liquidating all his assets. He owns 87 percent of the stock of Sather Gate Mortgage Company, the remaining stock being held

by his wife and the wife of a former employee. The two other stockholders agreed to the transaction before he entered into any negotiation for the sale of the company. Plaintiff was not present during any of the time he was negotiating with Heneveld. The final agreement he entered into with Heneveld was that Heneveld would pay $165,000 for the company. Out of this amount defendant was to receive $10,000 and plaintiff $5,000. Escrow was opened but the required payments were not made and escrow never closed.

1) *Plaintiff is entitled to a commission even though he is not licensed as a corporate securities broker.*

In *Stoll* v. *Mallory* (1959) 173 Cal.App.2d 694 [343 P.2d 970], the court considered the issue whether nonpayment of a commission could be excused because the plaintiff was not licensed under the Corporate Securities Law. In *Stoll,* the plaintiff, also a real estate broker, was retained to secure a purchaser for a radio station, not to find a buyer of stock. (*Id.,* at p. 699.) From the outset of the transaction, there was no indication to the broker that any sale or disposition of corporate securities would be involved. The broker did not learn that the sale of corporate securities was involved until after he had brought the buyer and seller together.

The court in *Stoll* agreed with the trial court's finding that the contract between seller and buyer for the transfer of securities was neither contemplated nor included in the original brokerage agreement, but on the contrary was incident to a sale of the radio station business. (*Id.,* at p. 699.) The court noted that the broker did not participate in the negotiations other than to bring the parties together and at no time did he represent himself as dealing in stocks or offer for sale or negotiate the sale of stock. (*Id.,* at p. 699.)

The court in *Stoll* pointed out that under the Corporate Securities Law that no one may sell, offer to sell, negotiate for the sale of, or otherwise deal in any security issued by others, or act in the capacity of a broker or agent required to be licensed thereunder without such license. (*Id.,* at p. 698.) The court then concluded that plaintiff did not violate the Corporate Securities Law because he did not purport to or engage in the business of dealing in stock, nor offer for sale or negotiate for the sale of, or sell, any stock. (*Id.,* at p. 699.)

In *Weber* v. *Jorgensen* (1971) 16 Cal.App.3d 74 [94 Cal.Rptr. 668], the court considered whether the rule stated in *Stoll* could be applied to a situation where the real estate broker, who was not licensed under the Corporate Securities Law, knew that a real estate transaction, if successfully consummated, would result in the transfer of securities and could therefore bring an action to collect a commission on the real estate transaction. The plaintiff in *Weber* was a licensed real estate broker whose services were retained in writing by defendant for the purpose of locating a buyer for certain enumerated resort properties operated as Echo Chalet, Inc. (*Id.,* at p. 76.) Plaintiff in *Weber* in bringing the action to collect a commission alleged that defendant " 'was and is the sole and majority and controlling shareholder of' " Echo Chalet. (*Id.,* at p. 77.) The listing agreement was silent on the subject of the sale of any corporate property in which defendant held an interest or the shares thereof. "At the time the listing was given to plaintiff, however, defendant told plaintiff that defendant would transfer title to the property by transferring all the stock of the corporation to a buyer of the property, as an incident to the sale of the property, and that the stock transfer agreement would be prepared and handled by an attorney and not by plaintiff." (*Id.,* at p. 77.)

The court in *Weber* stated, although plaintiff knew that the real estate transaction would result in the transfer of securities, "*Stoll* points the way to the proper disposition of this appeal." (*Id.,* at p. 84.) The court accepted the rule that a contract to sell corporate shares made by a person without the required certificate from the Corporations Commissioner is illegal. (*Id.,* at p. 84.) And where the conduct of a broker brings him within the proscription of the Corporate Securities Law, his contract will not support an action to recover compensation for his services. (*Id.,* at p. 84.) After setting forth the above principles the court stated: "However, such rules denying relief to parties to illegal contracts are subject to a wide range of exceptions. In each case, the grant or refusal of relief depends upon the public interest involved in the particular kind of illegality, including the policy of the transgressed law. (See, 6A Corbin, Contracts (1962), § 1534, pp. 818-819.) 'In each such case, how the aims of policy can best be achieved depends on the kind of illegality and the particular facts involved.' (*Lewis & Queen* v. *N. M. Ball Sons* (1957) 48 Cal.2d 141, 151 [308 P.2d 713].)

"Moreover, extension of the licensing requirement to a 'single or isolated' transaction (see *Owen* v. *Off, supra,* 36 Cal.2d at p. 755) of the character asserted in the case at bench has been criticized as being

inconsistent with the statute defining 'broker' as one who 'engages either wholly or in part in the *business* of selling, offering for sale, negotiating for the sale of, or otherwise dealing in, any security issued by others . . .' (Corp. Code, § 25006, subd. (a)). (Italics added.) (See Note (1959) 12 Stan.L.Rev. 103, 159-162.)" (At pp. 84-85.)

The court in *Weber* found no "public policy objection in the nature of the services" alleged to have been rendered by plaintiff. The court noted that it was of complete indifference to the buyers produced by plaintiff whether the resort was being operated by defendant or a corporation and the buyers could operate the resort through the already existing corporation or in their own proprietary capacity. (*Id.,* at p. 85.)

Defendant cites *Nationwide Investment Corp.* v. *California Funeral Service, Inc.* (1974) 40 Cal.App.3d 494 [114 Cal.Rptr. 77], for the proposition that the Corporate Securities Law applies when a person is operating in certain fringe areas of security transactions without a license which includes the sale of a business where the facts "are such as to put the *broker* on notice that a transfer of securities would be involved." (A.O.B., p. 5; italics added.) However, in *Nationwide,* the plaintiff who was seeking a commission for successfully negotiating the sale of a business was not licensed as either a real estate broker or a securities broker. *Nationwide* is therefore distinguishable from *Stoll, Weber,* and the case at bar where the issue is whether a real estate broker may recover a commission on a transaction that involves the transfer of securities. Since, in *Nationwide* the plaintiff did not have a real estate license, the issue was not whether the transfer of securities in question was incident to a sale of a business or property but simply whether the sale was regulated under the Corporate Securities Law. In *Nationwide* the plaintiff, pursuant to a written contract, was retained to negotiate securities transactions. (*Id.,* at p. 502.) *Nationwide* presents a similar fact situation as that found in *Owen* v. *Off* (1951) 36 Cal.2d 751 [227 P.2d 457], where the plaintiff was also specifically engaged to negotiate a securities transaction.

From *Weber, Stoll, Nationwide,* and *Owen,* the following principles can be derived regarding a person who is not licensed as a securities broker: (1) If a real estate broker in procuring a buyer for a "business" is unaware that the transaction will be effectuated through the transfer of stock and does not participate in the negotiations surrounding the actual transfer, he may recover compensation for his services; (2) a real estate

broker may still recover compensation for his services although he knows the transaction will result in the transfer of securities, if the transfer of the securities is "incident to" the sale of real or personal property; (3) a real estate broker may not recover a commission if he is employed specifically to sell or purchase securities; (4) if a person is neither licensed as a real estate broker nor a securities broker and contracts to negotiate a securities transaction, he may not recover a commission.

In the first two situations the agreement by which the real estate broker is retained is essentially and primarily one to sell a business or property. In the latter two situations, a real estate broker or one holding no license is retained primarily to negotiate a transfer of securities. Thus, it can be said that there is a "public policy objection" to the nature of services rendered if the nature is primarily to negotiate a transfer of securities. ■ In the case at bar plaintiff knew that Sather Gate Mortgage Company was a corporation and therefore stock existed. But, neither plaintiff nor defendant considered the method by which the "business" would be transferred. Nor was plaintiff specifically retained to sell securities. Therefore, plaintiff was primarily retained to sell a business or property and not securities and there is no "public policy objection" to his recovering a commission.

Effective January 2, 1969, the Corporate Securities Law (Corp. Code, §§ 25000-25804) was revised and renumbered. Former section 25700 of the former Corporate Securities Law provided: "No person or company shall act as an agent or broker until it has first applied for and secured from the commissioner a certificate, then in effect, authorizing it so to do."

Under former section 25006, subdivision (a), a broker is defined as "every person or company, other than an agent, who . . . engages either wholly or in part in the business of selling, offering for sale, negotiating for the sale of, or otherwise dealing in, any security issued by others, including all securities of the class listed in section 25100, or of underwriting any issue of such securities, or of purchasing such securities with the purpose of reselling them, or of offering them for sale to the public."

Under section 25004 a "broker-dealer" is now defined as "any person engaged in the business of effecting transactions in securities in this state for the account of others or for his own account." To be read with section 25004 is section 25210 which replaced former section 25700. Section

25210 provides: "Unless exempted under the provisions of Chapter 1 (commencing with Section 25200) of this part, no broker-dealer or agent shall effect any transaction in, or induce or attempt to induce the purchase or sale of, any security in this state unless such broker-dealer or such agent has first applied for and secured from the commissioner a certificate, then in effect, authorizing such person to act in that capacity."

Section 25210 performs the same function under the new Corporate Securities Law as did former section 25700 under the old Corporate Securities Law. (*Nationwide Investment Corp.* v. *California Funeral Service, Inc., supra,* 40 Cal.App.3d 494, 501.) *Nationwide* noted that section 25210 contained the following new phrase: " 'or induce or attempt to induce the purchase or sale of, any security . . .' " (*Id.,* at p. 501.) The court in *Nationwide* stated that if an individual in the course of his business participates in negotiations that involve the purchase or sale of securities, he is effecting or attempting to effect a transaction in such securities. (*Id.,* at p. 502.) As will be discussed *infra* plaintiff did not participate in any negotiations that involved the transfer of stock. Therefore, it appears that the revised Corporate Securities Law does not change the principles that can be derived from *Weber, Stoll, Nationwide* and *Owen,* since the phrase added to section 25210 does not affect or attempt to affect these principles.

2)  *The evidence supports the conclusion that plaintiff acted in the capacity of a "finder" rather than a "broker."*

Defendant next argues that the evidence does not support the conclusion that plaintiff merely acted as a "finder." Defendant asserts that the findings of fact are not supported by the evidence but neglects to direct this court to any particular finding of fact. From a reading of the brief submitted on behalf of defendant it seems that he is contending that the evidence clearly shows that plaintiff did more than merely bring buyer and seller together and thus plaintiff's ability to recover a commission cannot be based upon the fact he is a mere "middleman" or "finder."

Defendant is arguing that the evidence would not support a conclusion that plaintiff acted merely as a "finder" or "middleman" because one who acts merely as a "middleman" or a "finder" is not required to have a license pursuant to Corporations Code section 25210. Defendant is arguing that the services rendered by plaintiff befit the functions of a

corporate securities broker rather than a "finder" or a "middleman." There is no statutory definition of "finder" or "middleman." In *Evans* v. *Riverside Internat. Raceway* (1965) 237 Cal.App.2d 666 [47 Cal.Rptr. 187], the court was concerned with determining the status of a claimant as a finder or as a corporate securities broker required to be licensed. The court in summarizing some of the distinctions extracted from earlier decisions stated: " 'A person is not a broker . . . where he merely brings a buyer and a seller together so that *they may make their own contract without aid from him,* but any participation, however slight, in the negotiations will bring him within the definition.' (9 Cal.Jur.2d, Brokers, § 26, p. 164; cf. also, *Palmer* v. *Wahler,* 133 Cal.App.2d 705, 708-711 [285 P.2d 8]; *Freeman* v. *Jergins, supra,* 125 Cal.App.2d at pp. 547-551.)

" 'The same distinction between a finder (who finds, interests, introduces and brings the parties together *for the deal which they themselves negotiate and consummate*) and a broker (whose duty is to bring the parties to an agreement on his employer's terms) has been noted in all the decisions dealing with the subject (see, for example, *P. W. Chapman & Co., Inc.* v. *Cornelius* (2 Cir. 1930) 39 F.2d 555; *Lindeman* v. *Textron, Inc.* (D.C.S.D.N.Y. 1956) 143 F.Supp. 955; *Kuffler* v. *List* (D.C.S.D.N.Y. 1956) 144 F.Supp. 776; *Bittner* v. *American-Marietta Co.* (D.C.E.D. Ill. 1958) 162 F.Supp. 486.) A more precise designation for a finder would appear to be an "intermediary" or a "middleman."

" 'The services performed by finders may vary from case to case. But their distinction from the status of a broker, if the circumstances of the particular case require such a distinction to be drawn, lies in their bringing the parties together *with no involvement on their part in negotiating the price or any of the other terms of the transaction.* Of course, with respect to real estate, commissions are payable only to a licensee and only when he produces a buyer who agrees to seller's terms, unless otherwise expressly agreed.' (Italics added.) (*Ames* v. *Ideal Cement Co.,* 37 Misc.2d 883 [235 N.Y.S.2d 622, 625]. Cf. also, *Davidson* v. *Robie,* 345 Mass. 333 [187 N.E.2d 371, 374]; *Jackson* v. *New Orleans Board of Trade,* 207 La. 571 [21 So.2d 731, 736]; *Cray, McFawn & Co.* v. *Hegarty, Conroy & Co.* (D.C.S.D.N.Y. 1939) 27 F.Supp. 93, 97.)" (*Id.,* at pp. 675-676; see also *Hasekian* v. *Krotz* (1968) 268 Cal.App.2d 311, 321 [74 Cal.Rptr. 410].)

Defendant apparently is arguing that plaintiff participated in negotiations for the sale of Sather Gate Mortgage Company because he

communicated information between the buyer and seller before he introduced them. ■ However, the evidence clearly supports the conclusion that plaintiff was a mere "finder" or "middleman" as he did not negotiate any of the terms of the transaction or participate in the negotiations but merely acted as a conduit before the buyer and seller were introduced. Furthermore, it should be noted that plaintiff had no contact with either the buyer or seller after he brought them together except to inquire about his commission. In *Hasekian* v. *Krotz, supra,* at page 322, and *Freeman* v. *Jergins* (1954) 125 Cal.App.2d 536, 547 [271 P.2d 210], the courts looked at the conduct or activity of the claimant after he had introduced the buyer and seller to see if he had acted in the capacity of a finder or a broker. If this court looks at the activity of plaintiff after he introduced defendant and Heneveld, the inescapable conclusion is that plaintiff acted as a finder.

### 3) The trial court properly pierced the corporate veil.

Defendant contends that the trial court erred in finding him personally liable because (1) the alter ego doctrine or an individual liability theory was not sufficiently pleaded; and (2) there is insufficient evidence to support the conclusion that defendant "was the alter ego of Sather Gate Mortgage Co., and the corporate form may be disregarded in the interest of public policy."

■ Broadly speaking, the courts will disregard the corporate form, or, to use accepted terminology, " 'pierce the corporate veil,' " whenever necessary to prevent fraud or to achieve equity. (6 Witkin, Summary of Cal. Law (8th ed. 1974) Corporations, § 5, p. 4317.) ■ In order for the corporate veil to be pierced it must be shown that the corporation is dominated or controlled by the individual and that the failure to disregard the entity would sanction a fraud or promote injustice. (*Id.,* at p. 4318.) ■ Whether both of these requirements exist is a determination for the trial court and is not a question of law. (*Arnold* v. *Browne* (1972) 27 Cal.App.3d 386, 394 [103 Cal.Rptr. 775].) Defendant argues that a showing that he is the dominant and controlling shareholder without more is insufficient. ■ While this may be true, an inference may be drawn that the agreement between plaintiff and defendant was accepted in the belief that defendant was signing the agreement as an individual and that he regarded himself personally obligated to meet the terms of the agreement.[2] This finding would justify the lower court in

---

[2]This inference may be drawn from the fact that defendant negotiated with Heneveld to relieve himself from any liability to pay plaintiff.

piercing the corporate veil. (*Stark* v. *Coker* (1942) 20 Cal.2d 839, 848 [129 P.2d 390]; *Associated Vendors, Inc.* v. *Oakland Meat Co.* (1962) 210 Cal.App.2d 825, 838 [26 Cal.Rptr. 806].) The lower court so found and the evidence supports the finding. Furthermore, the amended complaint pleads that defendant was the controlling shareholder of the corporation and asks for judgment against defendant Stevenson. Since the second cause of action added by the amended complaint is directed solely against defendant Stevenson, it is rather difficult to understand his argument that he was not on notice that plaintiff was seeking to hold him personally liable.

Judgment affirmed.

Taylor, P. J., and Rouse, J., concurred.