Filed 10/25/13  Zakaryan v. Assuied CA2/1

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| ALBERT ZAKARYAN,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID ASSUIED et al.,<br><br>    Defendants and Appellants. | B241641<br><br>(Los Angeles County<br>Super. Ct. No. BC439896) |

    APPEAL from a judgment of the Superior Court of Los Angeles County.  Robert H. O'Brien, Judge.  Affirmed.

    Law Offices of Richard Weiss and Richard Weiss for Defendants and Appellants.

    Law Office of Christie Gaumer and Christie Gaumer for Plaintiff and Respondent.

_____

David Assuied and 3113 Grand Avenue, LLC (Grand), appeal from a judgment entered after a court trial awarding Albert Zakaryan the sum of $40,000 on Zakaryan's complaint against Assuied and Grand for breach of an oral finder's fee agreement. Assuied and Grand contend that the trial court erred by failing to consider their objections to the proposed statement of decision; Zakaryan's judicial admissions in the complaint established that he was acting as an unlicensed real estate broker or salesperson, rendering the alleged oral finder's agreement illegal and unenforceable; the oral finder's fee agreement was barred by the statute of frauds; and judgment against Grand was error because there was no evidence that Grand entered into or ratified the oral finder's fee agreement and alter ego was not established. We conclude that Assuied and Grand failed to file timely objections to the statement of decision, and the trial court did not err by failing to consider their objections; Zakaryan made no judicial admissions in the complaint that established that he was acting as an unlicensed real estate broker or salesperson; the oral finder's fee agreement was not barred by the statute of frauds; and the court did not err in entering judgment against Grand because the evidence shows that Assuied acted as an agent of Grand. We affirm the judgment.

## BACKGROUND

### A. The complaint

On June 17, 2010, Zakaryan filed a complaint against Assuied and Grand, alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, intentional misrepresentation, negligent misrepresentation, and conversion. The complaint alleged that Assuied and Grand were agents and alter egos of each other. Prior to June 17, 2008, Zakaryan had rented commercial real property located at 3113 South Grand Avenue in Los Angeles (the Property) for the manufacture and sale of wholesale garments. The Property was an asset of "the 1996 Revocable Living Trust." George Cercedes was the trustee of the trust, acting as the landlord of the Property (Seller). Zakaryan knew Assuied from prior business dealings. Assuied informed Zakaryan that he was interested in purchasing the Property for $1 million and discussed with him Zakaryan's existing relationship with Seller. Assuied and Zakaryan orally

2

agreed that Zakaryan would be entitled to a $40,000 finder's fee "if Zakaryan would bring together the Landlord/Seller and Defendants with a price of $1,000,000." Zakaryan "procured Landlord/Seller for Defendants on the terms Defendants requested." Seller sold the Property to Assuied and Grand and escrow closed on June 17, 2008. Grand obtained title to the Property on June 17, 2008. Assuied and Grand took possession of the Property on June 17, 2008; failed to pay the finder's fee; and refused to allow Zakaryan to remove his personal property, which exceeded $50,000 in value.

**B. The trial**

On October 19, 2011, Assuied and Grand filed an "anticipated motion for nonsuit." Zakaryan refused to submit on the briefs of the "anticipated motion for nonsuit," and the trial commenced on December 5, 2011.

Zakaryan testified as follows. In 2008, he owned a business called 3 Star Apparel, which manufactured clothing. Zakaryan purchased fabric from Assuied. Zakaryan rented the Property for his businesses on a month-to-month basis beginning in 2001. In 2008, the Property was listed for sale for $1.3 million. After Zakaryan told Seller that he wanted to purchase the Property, Seller said, "I will get you the building for one million dollars." On January 30, 2008, Seller presented a written offer to Zakaryan to sell the building to him for $1 million, but Zakaryan did not sign the contract because he was unable to obtain financing.

A week or so after Seller presented the written offer to Zakaryan, Assuied visited the Property and told Zakaryan that he was interested in purchasing the Property. Assuied was alone. Zakaryan told Assuied that he had a pending offer for $1 million. Assuied and Zakaryan agreed that if Zakaryan introduced him to Seller and Assuied bought the Property for $1 million and occupied it, Assuied would pay Zakaryan $40,000. Assuied also agreed that if he sold the Property without occupying it, he would split the profits with Zakaryan. Zakaryan's uncle had been interested in purchasing the Property and allowing Zakaryan to continue to rent, but Zakaryan thought that receiving the $40,000 finder's fee from Assuied was a more attractive deal. Subsequently, Assuied purchased the Property for $1 million. Zakaryan moved most of his personal property

3

out of the building and arranged with Assuied that when he returned from a vacation he would pick up the remainder. When he returned, the remainder of his personal property had been removed. In May 2009, Robert Moon, Zakaryan's business partner, was present with Zakaryan at a meeting with Assuied, during which Assuied refused to offset the $40,000 against money owed to him by Zakaryan from a separate transaction. Assuied stated that because Zakaryan had been late with his payments on the separate transaction, he would not pay Zakaryan the $40,000 until December 2009. Assuied never paid Zakaryan.

Moon testified that he was present at two meetings between Zakaryan and Assuied. During one meeting, Zakaryan asked Assuied to offset the $40,000 against what he owed Assuied on a different transaction. Assuied declined, stating that he wanted to keep the two transactions separate. At another meeting, Assuied told Zakaryan that he would not pay Zakaryan until Zakaryan paid Assuied the money he owed to Assuied. Moon never heard Assuied claim that he did not owe $40,000 to Zakaryan.

After the close of Zakaryan's case-in-chief, Assuied and Grand made a motion "for judgment." Assuied and Grand argued that Zakaryan's judicial admissions in the complaint made the alleged oral finder's fee agreement unenforceable because they showed that Zakaryan's actions in procuring the Property for Assuied and Grand were that of an unlicensed realtor, not a finder. Assuied and Grand also argued that the alleged oral finder's fee agreement was barred by the statute of frauds. They urged that Zakaryan failed to allege estoppel or unjust enrichment in the complaint or provide any evidence of estoppel or detrimental reliance as an exception to the statute of frauds to enforce the oral agreement. Assuied and Grand also contended that Zakaryan had not shown all the elements of a conversion cause of action. As to the conversion cause of action, the trial court took the motion under submission. The court denied the motion as to all other causes of action and the trial resumed.

Assuied testified that he is the manager of Grand, which became the owner of the Property on June 17, 2008. In connection with his business dealings, Assuied had visited Zakaryan at the Property. Assuied had never discussed purchasing the Property with

4

Zakaryan or entered into a finder's fee agreement with him. Assuied did not agree to split profits with Zakaryan. Assuied had been assisted by realtor William Morrison in purchasing the Property. Morrison showed him the Property and received a commission for the sale of the Property. The Property was listed at $1.15 million and Assuied made an offer for $1 million that Seller accepted. Grand became the owner of the Property on June 17, 2008.

Morrison testified that the Property had been listed with his real estate company and he represented Assuied in the purchase of the Property. Assuied's initial offer for the Property was $1.15 million. Zakaryan played no role in Assuied's purchase of the Property. Prior to Assuied's offer, Morrison had prepared an offer to purchase the Property for $1 million for Zakaryan to sign, but Zakaryan never signed the document.

At the close of trial on December 6, 2011, Assuied and Grand requested a statement of decision. The trial court replied, "Yeah sure."

## C. The tentative decision

On December 14, 2011, the trial court issued a tentative decision which stated as follows. "Plaintiff sues for: 1) Breach of Contract; 2) Breach of Implied Covenant of Fair Dealing; 3) Intentional Misrepresentation; 4) Negligent Misrepresentation, and, Conversion.

"The most striking phenomenon about this case is the nearly 100% divergent testimony received from plaintiff and defendant. Whatever plaintiff testified to defendant denied. The court must rely on the third party witnesses for any corroboration.

"<u>Breach of Contract</u>

"Plaintiff decided to purchase the subject building and was offered it for $1,000,000. The broker (Morrison - The Hegen Company) for the trustee of the owner (George Cercedes) sent him a form offer of purchase for him to sign and return. Plaintiff did not sign or return the form because he could not obtain funding for the purchase.

"Instead, upon discovering that the defendant was interested in making an offer, plaintiff informed defendant he, (plaintiff) stood to be able to purchase the property for $1,000,000 and he could arrange it so defendant could purchase it instead of him. He

5

informed the trustee of the understanding he had with defendant. The understanding was that if defendant was able to get the property for $1,000,000, defendant would pay plaintiff $40,000 as a finder's fee. There was an additional understanding relating to a possible split of sale profits defendant might get if he sold the property after obtaining it. That additional understanding is too vague to establish an enforceable contract. The finder's fee agreement is a viable contract.

"Mr. Moon corroborates a portion of plaintiff's testimony when he testified overhearing a discussion between the plaintiff and defendant. He corroborated a statement by defendant to the effect he would pay plaintiff when plaintiff paid him the money owed on fabric purchases.

"The court finds that plaintiff was not acting illegally as a real estate agent or broker. Further, the Statute of Frauds is not applicable. Defendant received the benefit of plaintiff's efforts in defendant being able to get the property for $1,000,000, not the $1,150,000 listing price. Defendant originally made the $1,000,000 offer, as Morrison testified, and he was able to purchase at the $1,000,000 figure.

"Defendant has failed to pay plaintiff the $40,000 finder's fee and judgment will be for plaintiff against him for that amount.

"<u>Breach of Covenant</u>

"This cause of action is moot as it is subsumed by the Breach of Contract cause of action. Defendant at all relevant times recognized the debt he owed, but he was just putting off paying it.

"<u>Intentional Misrepresentation</u>

"<u>Negligent Misrepresentation</u>

"These causes of action fail. There is insufficient evidence to show that defendant knew his promise was false and he did not intend to fulfill his obligation when he made the deal, or to show he had no reasonable grounds believing his promise was true - that is, he would pay $40,000 to plaintiff.

"Also, under a 'False Promise,' theory there is insufficient evidence that defendant did not intend to pay for it when he made it.

6

"<u>Conversion</u>

"There is insufficient evidence establishing this cause of action. The third party testimony of Morrison indicates that the property was a mess when he went through it at a relevant time, and he could not confirm the presence of any of the subject items plaintiff claims was converted.

"Furthermore, if plaintiff felt that defendant converted all the property, he did not act in accordance with that feeling by not reporting the conversion to the appropriate authorities. Also, it is inexplicable why he waited for 2 years in even making a formal complaint about the purported loss.

"This cause of action fails.

"Judgment will be for plaintiff against defendants and each of them for the $40,000.

"Counsel are advised that the procedures set out in [Code of Civil Procedure section 632 and California Rules of Court, rule 3.1590,] will now govern the remaining phase of the trial."

## D. Objections to the tentative decision

On December 23, 2011, Assuied and Grand filed objections to the tentative decision, urging that the tentative decision did not explain how Grand could be held liable when it was not party to the finder's fee agreement; detrimental reliance was not established; the tentative decision did not address why the statute of frauds did not bar the action; and the factual findings of the tentative decision indicated that Zakaryan negotiated a lower purchase price, which was inconsistent with the finding that he was only acting as the finder.

In its minute order of January 6, 2012, the trial court noted that because the court had issued a tentative decision on December 14, 2011, the parties had until December 29, 2011, to request a statement of decision pursuant to Code of Civil Procedure section 632.[1] The court stated that neither side had requested a statement of decision, and that it

---

[1] Undesignated statutory references are to the Code of Civil Procedure.

would treat Assuied and Grand's objections to the tentative decision as a request for a statement of decision. The trial court adopted the tentative decision as the court's proposed statement of decision. It ordered Zakaryan to prepare and submit a proposed judgment consistent with the statement of decision.

In its minute order of February 6, 2012, the trial court noted that the parties had failed to file objections to the proposed statement of decision, which was issued on January 6, 2012. The court adopted the proposed statement of decision as the court's statement of decision. The court noted that Zakaryan had not lodged a proposed judgment and again ordered Zakaryan to prepare, serve, and lodge a proposed judgment consistent with the statement of decision by February 10, 2012.

On March 2, 2012, Assuied and Grand filed objections to the proposed statement of decision, which duplicated the objections to the tentative decision.

In its minute order of March 7, 2012, the trial court noted that, pursuant to court order, Zakaryan had filed a proposed judgment. Assuied and Grand had not objected to the proposed judgment. The court also stated that Assuied and Grand's objection to the proposed statement of decision filed on March 2, 2012, was untimely because the proposed statement of decision was issued on January 6, 2012, and any objection should have been filed 20 days thereafter. The court stated that the proposed judgment submitted by Zakaryan was not in the proper form and ordered Zakaryan to submit a proposed judgment consistent with the statement of decision no later than noon on March 15, 2012.

On April 6, 2012, the trial court signed and filed the statement of decision, ordering judgment in favor of Zakaryan and against Assuied and Grand in the sum of $40,000.

Judgment was entered and Assuied and Grand appealed.

**DISCUSSION**

**A.  Assuied and Grand failed to file timely objections to the statement of decision and the trial court did not err by failing to consider their objections**

Assuied and Grand contend that the trial court erred by failing to consider their objections to the proposed statement of decision.  We disagree because Assuied and Grand failed to file timely objections to the proposed statement of decision and the trial court did not err by failing to consider their objections.

The purpose of a party's request for a statement of decision and its objections to a proposed statement of decision is to avoid the application of the doctrine of implied findings.  (*Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494 (*Ermoian*).)  "Ordinarily, when the court's statement of decision is ambiguous or omits material factual findings, a reviewing court is required to infer any factual findings necessary to support the judgment.  [Citations.]  This rule 'is a natural and logical corollary to three fundamental principles of appellate review:  (1) a judgment is presumed correct; (2) all intendments and presumptions are indulged in favor of correctness; and (3) the appellant bears the burden of providing an adequate record affirmatively proving error.'  [Citation.]  [¶]  In order to avoid the application of this doctrine of implied findings, an appellant must take two steps.  First, the appellant must request a statement of decision pursuant to . . . section 632 . . . ; second, if the trial court issues a statement of decision, 'a party claiming omissions or ambiguities in the factual findings must bring the omissions or ambiguities to the trial court's attention' pursuant to section 634.  [Citation.]"  (*Ermoian*, at p. 494.)  Section 634 provides, "When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court either prior to entry of judgment or in conjunction with a motion under Section 657 or 663, it shall not be inferred on appeal or upon a motion under Section 657 or 663 that the trial court decided in favor of the prevailing party as to those facts or on that issue."

The trial court held that Assuied and Grand's objections to the proposed statement of decision were untimely because the proposed statement of decision was issued on

9

January 6, 2012, and any objections should have been, but were not, filed 20 days thereafter. Assuied and Grand claim that because they had orally requested a statement of decision on December 6, 2011, they "in good faith believed that they [did not need] to re-submit the same Objections to the Request for Statement of Decision because they were already submitted to the court."

But Assuied and Grand have not shown that the oral request for a statement of decision was proper. Section 632 requires that a request for statement of decision must be made within 10 days after the court announces a tentative decision, unless the trial is concluded within one calendar day, or in less than eight hours over more than one day, in which event the request must be made prior to the submission of the matter for decision. Section 632 also requires that "[t]he statement of decision shall be in writing, unless the parties appearing at trial agree otherwise; however, when the trial is concluded within one calendar day or in less than 8 hours over more than one day, the statement of decision may be made orally on the record in the presence of the parties." But Assuied and Grand do not contend that trial was concluded within one calendar day or in less than eight hours over more than one day. And the record does not show that the trial was concluded within one calendar day or in less than eight hours over more than one day.

After having been informed by the trial court on January 6, 2012, that it was treating Assuied and Grand's objections to the tentative decision as a request for a statement of decision and adopting the tentative decision as a proposed statement of decision, Assuied and Grand were then required to bring any claimed deficiency to the attention of the trial court pursuant to section 634, quoted above, and California Rules of Court, rule 3.1590(g), which provides, "Any party may, within 15 days after the proposed statement of decision and judgment have been served, serve and file objections to the proposed statement of decision or judgment." As noted by the court in its February 6, 2012 order, the parties had 20 days (15 days plus 5 days for mailing) from January 6, 2012, the day the proposed statement of decision was filed, to file objections, but failed to do so.

10

Accordingly, Assuied and Grand have not shown that the trial court erred by failing to consider their objections to the proposed statement of decision.

**B. Zakaryan made no judicial admissions in the complaint that established that he was acting as an unlicensed real estate broker or salesperson**

Assuied and Grand contend that Zakaryan's judicial admissions in the complaint established that he was acting as an unlicensed real estate broker or salesperson, rendering the alleged oral finder's fee agreement illegal and unenforceable. Assuied and Grand also assert that the oral finder's fee agreement was barred by the statute of frauds. We disagree and conclude that Zakaryan made no judicial admissions in the complaint that established that he was acting as an unlicensed real estate broker or salesperson and the oral finder's fee agreement was not barred by the statute of frauds.

"Numerous cases have held that one who simply finds and introduces two parties to a real estate transaction need not be licensed as a real estate broker. Such an intermediary or middleman is protected by the finder's exception to the real estate licensing laws . . . ." (*Tyrone v. Kelley* (1973) 9 Cal.3d 1, 8 [plaintiff who introduced defendant to lender entitled to finder's fee where he did not participate in negotiations].) "The finder is a person whose employment is limited to bringing the parties together so that they may negotiate their own contract, and the distinction between the finder and the broker frequently turns upon whether the intermediary has been invested with authority or duties beyond merely bringing the parties together, usually the authority to participate in negotiations." (*Id.* at p. 9.) The distinction between a finder and a broker may also turn on whether the intermediary has the power to bind or commit either party. (*Batson v. Strehlow* (1968) 68 Cal.2d 662, 669.) And a finder does not have a confidential relationship to either of the parties and cannot bind either party. (*Ibid.*) "Whether a person acted as a finder or as a broker is a question of fact, requiring examination of his conduct after the introduction of the principals to the transaction. [Citation.]" (*Preach v. Monter Rainbow* (1993) 12 Cal.App.4th 1441, 1452.)

Assuied and Grand argue that Zakaryan acted as an unlicensed realtor, claiming that his allegations in his pleadings that he brought "'together the [Seller] and [Assuied

11

and Grand] with a price of $1,000,000.00'" were an admission that he assisted in reducing the price of the Property. They also point to Zakaryan's responses to interrogatories, which state, "[Assuied and Grand] simply wanted [Zakaryan's] contacts without paying the agreed finder's fee. Additionally, [Assuied and Grand] could not accomplish the transaction at that desirable price without [Zakaryan's] assistance and contacts." But *Zappas v. King Williams Press, Inc*. (1970) 10 Cal.App.3d 768 (*Zappas*), cited by Assuied and Grand, does not assist their argument. In that case, the appellate court noted that a real estate transaction between the intermediary plaintiff and the defendants consisted of two parts: furnishing the defendants with a tenant for real property and construction of a building on the real property. (*Zappas*, at p. 775.) The court determined that the plaintiff helped negotiate the lease, because he alleged in his complaint that he had negotiated arrangements for the construction of a building. The court reasoned, "[T]he more favorable to defendants plaintiff's 'arrangements' with respect to the construction turned out to be the easier it would be for them to agree on other terms of the lease with the prospective lessee." (*Ibid*.) The court concluded that because the "plaintiff has never claimed that he can amend his complaint to allege that he was a licensed broker at the time of the subject transaction, the demurrer was properly sustained without leave to amend." (*Id*. at pp. 775–776.)

We conclude that the facts alleged in the complaint and the evidence at trial are distinguishable from *Zappas* because here Zakaryan did not engage in negotiations for construction of a building that were essential to a real property transaction, or any other negotiations. More on point is *Tenzer v. Superscope, Inc*. (1985) 39 Cal.3d 18 (*Tenzer*). There, the plaintiff, who was not a licensed real estate broker, told a seller of commercial property that he could introduce him to a potential buyer. The plaintiff and the seller orally agreed that if the seller sold the property to the buyer for $16 million, the seller would pay the plaintiff a 10 percent finder's fee. The appellate court held that whether the plaintiff was a finder was an issue for the trier of fact, requiring an examination of the plaintiff's conduct after the introduction of the buyer to the seller, to determine whether he participated in their negotiations. (*Tenzer*, at p. 31.) Similarly, in *Lyons v. Stevenson*

12

(1977) 65 Cal.App.3d 595 (*Lyons*), the plaintiff had an agreement with the defendant to find a purchaser for his company. The plaintiff told a buyer that the defendant's company "was available at the value of the assets of the company plus 15 percent." (*Lyons*, at p. 599.) The value of the assets was estimated to be $125,000, and the buyer gave the plaintiff, to pass on to seller, a written offer to purchase the company for the amount of $125,000, plus 15 percent. (*Ibid*.) The court held that the plaintiff properly was found to be a finder because "he did not negotiate any of the terms of the transaction or participate in the negotiations but merely acted as a conduit before the buyer and seller were introduced. Furthermore, it should be noted that plaintiff had no contact with either the buyer or seller after he brought them together except to inquire about his commission." (*Id*. at p. 606.)

Accordingly, we disagree with Assuied and Grand's argument that Zakaryan's allegations that he had brought "'together the [Seller] and [Assuied and Grand] with a price of $1,000,000.00'" were an admission of his role as a negotiator. As in *Tenzer* and *Lyons*, Zakaryan and Assuied merely agreed on a fixed finder's fee upon the sale of the Property for a fixed sum. Zakaryan did not have the authority to participate in negotiations between the parties. He did not participate in any negotiations or do any work on the transaction on behalf of Assuied. Zakaryan did not have the power to bind either party to the purchase agreement or have a confidential relationship with either of the parties. Assuied was represented solely by Morrison and was free to negotiate any other terms. In fact, Morrison testified that Assuied initially had made an offer for $1,150,000. Thus, we conclude that Zakaryan made no judicial admissions in the complaint that established that he was acting as an unlicensed real estate broker or salesperson.

Nor are we persuaded by other cases cited by Assuied and Grand, where the intermediary's actions went well beyond that of a finder. (See *Preach v. Monter Rainbow*, *supra*, 12 Cal.App.4th at pp. 1448, 1452 [intermediary was not mere finder where after introducing parties he continued to communicate with and advise them about negotiations, including rental rate being negotiated, tax effect of future sale of property,

13

and waiving free rent provision]; *Hasekian v. Krotz* (1968) 268 Cal.App.2d 311, 322–323 [intermediary presented booklet to buyers, met with buyers outside of and at property, consulted applicable public records and local ordinances, visited county planning department, worked on water problems, engaged surveyor, visited civil engineer and secured estimates]; *Rees v. Department of Real Estate* (1977) 76 Cal.App.3d 286, 295 [intermediary routinely solicited information regarding specific lease terms and conditions for rentals; inquired regarding negotiability of certain terms; offered opinions concerning average rental prices; and furnished rental information to prospective tenants].)

We also conclude that the evidence supports the application of the doctrine of estoppel to plead the statute of frauds to prevent unconscionable injury or unjust enrichment. (*City of Long Beach v. Mansell* (1970) 3 Cal.3d 462, 489 [elements of equitable estoppel are: "'(1) the party to be estopped must be apprised of the facts; (2) he must intend that his conduct shall be acted upon, or must so act that the party asserting the estoppel had a right to believe it was so intended; (3) the other party must be ignorant of the true state of facts; and (4) he must rely upon the conduct to his injury'"].) In *Tenzer*, the plaintiff was aware of other real estate opportunities for the buyer, but refrained from exploring such opportunities on the buyer's behalf in reliance on the seller's promise that the plaintiff would receive a finder's fee from the sale of the commercial property. The appellate court noted that while Civil Code section 1624 barred the oral finder's fee agreement by the statute of frauds, "The doctrine of estoppel to plead the statute of frauds may be applied where necessary to prevent either unconscionable injury or unjust enrichment. [Citation.]"[2] (*Tenzer*, *supra*, 39 Cal.3d at p. 27.) The court held that summary judgment was granted improperly because the plaintiff had alleged that the seller "promised to pay him for valuable information which

---

[2] Civil Code section 1624 provides in pertinent part as follows: " (a) The following contracts are invalid, unless they, or some note or memorandum thereof, are in writing and subscribed by the party to be charged or by the party's agent: [¶] . . . [¶] (4) An agreement authorizing or employing an agent, broker, or any other person to . . . find a purchaser or seller of real estate . . . for compensation or a commission."

14

could have been sold elsewhere. In reliance on this promise, [the plaintiff] surrendered [the buyer's] name." (*Ibid.*)

Here, Assuied was apprised of the finder's fee arrangement with Zakaryan. After Zakaryan told Seller that Assuied wanted to purchase the Property for the same price as his offer, Assuied purchased the Property, leading Zakaryan to believe that he was entitled to the finder's fee. Zakaryan was ignorant that Assuied did not believe he owed the finder's fee. And in reliance on his agreement with Assuied, Zakaryan did not broker an introduction between his uncle and Seller. Zakaryan's uncle had been interested in purchasing the Property and allowing Zakaryan to continue to rent, but Zakaryan thought that receiving the $40,000 finder's fee from Assuied's was a more attractive deal. As the trial court noted, Assuied and Grand received the benefit of the bargain.

Accordingly, we conclude that an enforceable finder's fee agreement existed between Zakaryan, on the one hand, and Assuied and Grand, on the other.

## C. **The trial court did not err in entering judgment against Grand**

Assuied and Grand contend that judgment against Grand was error because Assuied's offer to purchase the Property was in his name only and there was no evidence that Grand entered into or ratified the oral finder's fee agreement. He also argues that alter ego was not established. We disagree because the evidence shows that Assuied acted as an agent of Grand; therefore, we need not address Assuied and Grand's contention that alter ego was not established.

Civil Code section 2330 provides that "[a]n agent represents his principal for all purposes within the scope of his actual or ostensible authority, and all the rights and liabilities which would accrue to the agent from transactions within such limit, if they had been entered into on his own account, accrue to the principal." Assuied testified that he is the manager of Grand and that Grand became the owner of the Property on June 17, 2008, testimony that Assuied and Grand ignore. Thus, we determine that the trial court did not err in entering judgment against Grand because the evidence shows that Assuied acted as an agent of Grand. In light of our conclusion, we need not address Assuied and Grand's contention that no evidence of alter ego was established.

15

Accordingly, we conclude that the trial court did not err in entering judgment against Grand.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED.


MALLANO, P. J.

We concur:


ROTHSCHILD, J.


JOHNSON, J.